CORNELL, Plaintiff in error, vs. THE STATE, Defendant in
error.

*October 25 — November 7, 1899.*

*Criminal law and practice: Jury: Acceptance: Waiver of objections:
Murder: Information: Duplicity: Immaterial error: Evidence: Ex-
pert testimony: Hypothetical questions: Confessions: Instructions
to jury: Corroboration: List of witnesses: Appeal and error: Ex-
ceptions.*

1. An unconditional acceptance of the jury, after it is complete, by
   counsel for defendant in a criminal case is a waiver of all objec-
   tions to the manner of its selection or to the qualifications of the
   jurors.
2. Duplicity in an information is not a ground for motion in arrest of
   judgment, at least unless the crimes be of distinct grades so as to
   affect the character of the sentence which may be imposed there-
   for. If the duplicity is apparent on the face of the information it
   must be taken advantage of by demurrer, or motion to quash, or
   motion that the prosecution be confined to one offense or the other;
   but if it is not so apparent the defendant's rights may be protected
   by motion to require an election when the duplicity is first made
   to appear to the court.
3. An information charging the defendant with having killed and
   murdered two persons, naming them, does not show duplicity upon
   its face, since both may have been killed as the result of a single
   act.
4. Where no particle of evidence was rendered either necessary or ad-
   missible by the fact that the killing of two persons was alleged

Cornell vs. The State.

in the information, the error, if any, in overruling a motion to require an election on the ground of duplicity is immaterial, and will be disregarded under sec. 2829, S. & B. Ann. Stats.

5. Where a long hypothetical question is asked to which objection is made by the opposing party, it is the duty of counsel, both in the trial court and in the appellate court, to point out the particulars wherein the question is deemed improper.

6. Where the evidence given is not conflicting and is not so complicated or voluminous as to make a difference of understanding of material facts probable, an expert witness who has heard it all may be asked to predicate his opinion thereon, on the assumption of its truth, without rehearsing it in a hypothetical question; but unless such conditions exist a question should be put embodying the facts on which the expert is asked to base his opinion. The volume and degree of complication of testimony, however, which renders one form of question or the other proper, rests largely in the sound discretion of the trial court.

7. Where the accused was clearly guilty of wilful and premeditated murder unless he was insane and not guilty at all, a refusal to give instructions relative to the lower grades of homicide was proper.

8. Where the evidence is uncontradicted that before his arrest the defendant, after due reflection, sought and availed himself of an opportunity to make confessions of guilt, and was not led thereto by any invitation, request, threat, or promise, such confessions must be regarded as voluntary.

9. In the prosecution of a father for the murder of his two children with whom he was sleeping, it appeared, among other things, that the accused was found in the room where the children were killed, with his throat cut; that the commission of the offense by any other person was improbable; and that the bottoms of the feet of the accused were stained with blood, showing conclusively that he had been on his feet after the killing. *Held*, sufficient corroboration of a confession of guilt to warrant a conviction, if such corroboration was required.

10. The defendant in a criminal prosecution is not entitled to a list of the witnesses against him, there being no statute in this state conferring that right.

11. Error cannot be predicated on the refusal to allow the defendant to open and close the argument on the issue of insanity, unless proper exception is taken to the refusal.

12. The admission, on the trial of the issue of insanity, of testimony *prima facie* connecting the accused with the offense charged is not error, where such testimony was relevant and admissible to show conduct bearing on his mental condition.

ERROR to review a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Affirmed.*

On November 19, 1897, the defendant resided with his wife and two children of their own and two of her children by former marriage, in indigent and destitute circumstances, at Oconomowoc. On that evening the defendant went to bed in one room with his two children, aged respectively six and four. Later the wife, together with a boarder, between whom and herself illicit relations, with the knowledge and consent of the defendant, are claimed to have existed, went to bed in another room. In the morning the defendant was found in bed with his throat cut, almost but not quite fatally, and the two children dead in bed, each with a blow upon the head from a hammer, fracturing their skulls, and each with throat cut fatally. His wife immediately called the boarder, who notified certain neighbors, who came with a physician. Defendant was conscious on their arrival, and, in answer to inquiries, stated, substantially, that he did not know whether he killed the children or not; that, if he did, he did not know it. Defendant's bed and bedroom were smeared with blood, as also his clothes and parts of his person, including the soles of his feet. A bloody razor was found upon the commode near the head of the bed, and a bloody hammer on the floor near the bed. *Rigor mortis* was complete in the bodies of both the children. The wife and boarder were arrested, and the defendant treated by the physician, and a nurse provided for him. There were no signs of blood elsewhere in the house, or on the persons or clothing of the wife or the boarder.

After a few days the defendant modified his statement by saying that, after reading the newspaper accounts of how things were found in the house, it seemed as if he must have killed the children; and ten days later, of his own volition, he requested his nurse to procure the attendance of the district attorney, saying that he wanted to tell the whole story,

Cornell vs. The State.

and thereupon did relate to the nurse his statement (which was afterwards repeated to many other persons without substantial variation), to the effect that on retiring that night he had determined to end his life, owing to his indigent condition and the illicit relations between his wife and the boarder; that he waited only until he heard them retire to the other bedroom, and then proceeded to get his razor to carry his design into effect; that, his glance falling upon the children, the thought came to him that he ought not to leave them to grow up under such circumstances, and that it was better to take them with him; that he remembered having struck his foot against a hammer as he was going to bed, and determined to use that to stun the children before cutting their throats, in order that they should not suffer; that accordingly he secured the hammer and carried out that design, first striking them each on the head, and then cutting their throats (giving details as to shifting the body of one of them so that the blood should not continue to spurt upon the wall); that then, kneeling upon the bed, he drew the razor across his own throat, and fell off the bed, which was the last memory he had until towards morning, when he became conscious and struggled back onto the bed and lay down again, where he was found. He detailed having dropped the razor, finding it in the morning; first putting it under his pillow, and afterward laying it on the commode, where it was found. He gave as a reason for desiring to make this statement that his previous statements had not, as he expected, been sufficient to relieve his wife from the charge, and that he did not want others to suffer for his act. Substantially this statement was repeated to the district attorney, Mr. Parkinson, to the deputy sheriff, and to others. The proof discloses that it was made before he was arrested, without any solicitation, threats, or suggestion of advantage from any of them, and entirely voluntarily.

Being arrested and brought to trial, he interposed a plea.

of insanity, which issue being found against him, the trial proceeded to a verdict of guilty of murder in the first degree, followed by sentence to imprisonment for life, to review which judgment writ of error was sued out from this court.

Upon the trial of the issue of insanity much evidence was offered, which, however, went little further than to disclose a somewhat weak-minded man, without malice or ill temper, addicted to drinking at various intervals in his life, and through many years addicted to self-abuse, but with the ordinary powers of understanding and reasoning as to his acts, and of guiding his conduct by his will. A situation approaching pauperism was shown, and declarations to the effect that he had surrendered his wife to illicit intercourse with the boarder as a means of sustaining his family, somewhat against her will. Other material facts are stated in the opinion.

.John A. Kelly, for the plaintiff in error.

For the defendant in error there was a brief by the Attorney General, and oral argument by R. F. Hamilton, second assistant attorney general.

Dodge, J. 1. Several errors are assigned upon the selection of the jury, which are classifiable into: (a) That the court, after 270 jurors had been drawn from the list supplied by the jury commissioners, ordered the sheriff to summon thirty from the county at large for the purposes of this case; (b) that the court denied defendant's challenge to several jurors who said upon their voir dire that they had formed an opinion that a murder had been committed, but not as to the responsibility of any one for it; (c) that the court overruled defendant's challenge to jurors who had been summoned upon special venire for an individual case within a year; (d) that the court sustained the state's challenge for cause to a juror who said that he had a preconceived opinion that

any person committing suicide must be insane. After the jury was complete, and before it was sworn, the court inquired of each of the counsel whether he was satisfied with the jury, and received from each an unconditional affirmative answer. It is. apparent, therefore, that under the rule last laid down in *Emery v. State,* 101 Wis. 627, the defendant is not in position to assign error upon any of these grounds. His unconditional acceptance of the jury waived all such grounds of objection, even if otherwise tenable. *Flynn v. State,* 97 Wis. 44.

2. The information, without description or enlargement, merely charged the defendant with the wilful and premeditated murder of both William Cornell and Lillie Cornell. Before any witnesses were called, even on the issue of insanity, the defendant moved the court to require the prosecution to elect between the two, which motion was overruled. After the verdict, defendant moved in arrest of judgment upon the ground of duplicity in the information, which motion was also overruled.

Duplicity consists in alleging two independent crimes in the same count of an information or indictment; and if those crimes be distinct, to the extent at least that different defenses may be interposed as to each or different evidence may be necessary as to them, the accused has a right to object and insist on their severance. This he may do, if the duplicity is apparent on the face of the information, by a demurrer, by motion to quash, or by a motion that the prosecution be required to confine itself to one or the other offense. 1 Bishop, Crim. Proc. § 442; *Fulmer v. Comm.* 97 Pa. St. 503; *Forrest v. State,* 13 Lea, 103. If he do not so object, he will be deemed to have waived the irregularity, as he has a right to do; for its effect may be not to prejudice him, but even to aid him in his defense. For this reason duplicity in the information is not a ground for a motion in arrest of judgment,— certainly unless the crimes be of distinct grades, so

as to affect the character of the sentence which may be imposed therefor. 1 Bishop, Crim. Proc. § 443; *Comm. v. Tuck*, 20 Pick. 356; *Forrest v. State, supra*. If, however, the duplicity is not apparent upon the face of the information, obviously it cannot be reached either by a motion to quash, a demurrer, or a motion to require an election, made before the taking of any evidence. In that case it would seem that the defendant's right might be protected, whenever the duplicity was first made to appear to the court, by then moving to require an election as to which crime should be prosecuted. *Forrest v. State, supra*. In the case at bar no duplicity is apparent upon the face of the information. So far as appears from that alone, the children might both have been killed by a single act, as by a single shot from a gun, or by a single blow. *Rucker v. State*, 7 Tex. App. 549. The court therefore could not, at the time the motion was made, recognize any defect or duplicity, and properly overruled defendant's motion, which was not renewed after the circumstances of the killing appeared.

This assignment of error is also untenable on another ground. S. & B. Ann. Stats. sec. 2829, commands that this and all other courts shall, "in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." This statute is equally applicable to criminal as to civil actions. *Odette v. State*, 90 Wis. 258, 262. It is apparent from the statement of the case, and the proofs upon which the verdict was founded, that no particle of evidence was rendered either necessary or admissible by the fact that the killing of the two children was alleged in the same information. All that was disclosed with reference to the appearance of the room where the crime was committed, or of the defendant himself, the condition of the bodies, the absence of signs elsewhere in

the house or upon its other inmates to incriminate them, and
all of defendant's confessions, would have been equally ad-
missible, and equally required, had the death of either child
been alleged alone; and the punishment for the murder of
either must have been the same as that for the murder of
both. The utmost diligence and refinement, therefore, would
fail to disclose any possible injury or prejudice to the de-
fendant resulting from the overruling of his motion to re-
quire an election.

We have not discussed, and do not decide, whether du-
plicity in fact existed in this information. It is uniformly
held that a killing of two or more by a single act may be
alleged in one count, and some authorities go to the extent
of holding the same to be true where the killing of two or
more is the result of one transaction, although by different
acts. The latter proposition has not been decided in Wis-
consin. In *Oleson v. State*, 20 Wis. 58, a charge of aiding
in the escape of two prisoners was held single, on the ground
that the language used indicated a *single act*, so that but one
offense was committed. A similar interpretation was deemed
significant in construing the information in *Koetting v. State*,
88 Wis. 502, 506.

3. Error is assigned upon the overruling of objections to
several hypothetical questions. The prosecuting attorney
addressed to a medical witness a hypothetical question con-
sisting of about 600 words, in which are cursorily narrated
circumstances, conduct, and appearance of the accused, which
had been testified to by one or another witness. This ques-
tion was objected to generally, as not based on the evidence.
No specification was made of any defect in this respect, and
none is made in this court. The court below must have
been, as we are, wholly at a loss to know whether defendant's
counsel claims that there are elements of the question not sup-
ported by the evidence, or that material facts established by
the evidence are omitted. Under such circumstances we can-

not say that any error of which the defendant could have the right to avail himself has been committed. It is unworthy of counsel, owing a duty of fairness and aid to the courts, to urge either an objection or an error such as this. The trial court cannot be expected on the spur of the moment to correctly analyze and test the details of an extended hypothetical question, covering as it did, and as they so often do, the entire field of the evidence in the case. Nor should we be expected to search through some hundreds of pages of manuscript for omissions or mistakes which counsel declines to indicate specifically. . It is the duty of counsel to point out wherein such a question is improper,.and he should not be permitted to make of such an objection an unfair trap for the trial judge, to be availed of after the evidence is written out and brought to this court for review. Independently of this view, however, we do not find that the objection is well taken. The question seems to us a fair, though unnecessarily prolix, compilation of material facts on which evidence had been offered.

A serious question is raised by defendant's exceptions to allowance of questions put by the prosecuting attorney to two · medical experts, who testified they had heard all the testimony except the expert testimony. The questions were as follows: "Assuming that the testimony as given by these witnesses is true, you may state whether, in your opinion, this defendant on November 19, 1897, was sane or insane." The competency of such interrogatory is not discussed at all in either brief, and counsel for plaintiff in error does not suggest it, except by reference to a page of the record. Were the case an ordinary one, where anything less than the liberty for life of the defendant were at stake, we should feel that our duty to other business of the court forbade us to supply the omissions of counsel by searching out both the error complained of and the authorities on the subject. In deference, however, to the overwhelming consequences to

the party, we have made exception to the rule indicated in *Butler v. State*, 102 Wis. 364, that ordinarily the court will not consider assignments which counsel do not deem worthy of argument.

There are two well-established lines of decisions by this court as to the propriety of such question in this form: (1) That such question is proper where based upon the testimony of a single or a few witnesses, whose testimony is not conflicting, so that there is no likelihood that the expert witness and the jury can understand it differently. *Wright v. Hardy*, 22 Wis. 348; *Gates v. Fleischer*, 67 Wis. 504, 509; *Abbot v. Dwinnell*, 74 Wis. 514, 520; *Patry v. C., St. P., M. & O. R. Co.* 82 Wis. 408, 414; *McKeon v. C., M. & St. P. R. Co.* 94 Wis. 477, 483. (2) Such question is improper where the evidence is voluminous, elicited from a large number of witnesses, extending through several days, and not uncontradictory. *Bennett v. State*, 57 Wis. 69, 83; *Quinn v. Higgins*, 63 Wis. 664, 668; *Maitland v. Gilbert P. Co.* 97 Wis. 476, 484.

The latter rule is in part an extension of the very well settled proposition that an expert cannot be allowed to pass on the effect of evidence and thereby usurp the function of the jury, which is well illustrated and stated in *Luning v. State*, 2 Pin. 215, 220, cited by TAYLOR, J., in *Bennett v. State*, *supra;* the question held improper being: "From all the evidence, did the mill pond, in your opinion, cause the sickness?"—and the vice being that, before the witness could form the opinion, he must make up his mind what facts the evidence proved. *Maitland v. Gilbert P. Co.* 97 Wis. 476, 484. Obviously, if testimony of different witnesses is conflicting as to a material fact, the hypothesis of the truth of all the testimony is absurd; the witness, if he answers, must of necessity evade that hypothesis, and draw a conclusion of fact variant from the testimony of one or the other witness who is contradicted.

The broad rule that an expert who has heard all the evidence may be asked his opinion, based on an assumption of the truth of what he has heard, is supported by a number of authorities; and the only limitation placed thereon, outside of Wisconsin, is that such testimony must be without substantial conflict, except that in *Hunt v. Lowell G. L. Co.* 8 Allen, 169, 172, the fact that it is not complicated is suggested as supporting the propriety of the question. The following are the more important and direct cases in which the subject is discussed: *Fairchild v. Bascomb,* 35 Vt. 398; *State v. Hayden,* 51 Vt. 296; *Woodbury v. Obear,* 7 Gray, 467; *Hunt v. Lowell G. L. Co., supra; Negroes Jerry v. Townshend,* 9 Md. 145; *State v. Cole,* 94 N. C. 958; *Kempsey v. McGinniss,* 21 Mich. 123; *Getchell v. Hill,* 21 Minn. 464; *State v. Lautenschlager,* 22 Minn. 521; *Storer's Will,* 28 Minn. 9; Rogers, Exp. Test. 70, 71.

From a careful comparison of the decisions of this court, the following rule may be formulated: Where the evidence given is not conflicting, and not so complicated or voluminous as to make a difference of understanding of material facts probable, an expert witness who has heard it all may be asked to predicate his opinion thereon, on the assumption of its truth, without rehearsing it in a hypothetical question; and that, unless such conditions exist, a question should be put, embodying the facts on which he is asked to base his opinion.

It is to be noted, however, that the volume and degree of complication of testimony which may render the one form or other of question proper must rest largely in the sound discretion of the trial judge. The intelligence of the expert witness, the consecutiveness and clearness with which testimony goes in, the interruptions or diversions of attention to other subjects, are all material considerations, and may well vary in different cases, and cannot so well be known to this court. The existence or nonexistence of conflict in the testi-

Cornell vs. The State.

mony, however, is a question answerable with substantial certainty; and if substantial conflict exist it would be error to permit a question in the form under discussion.

Applying these rules to the case before us, we find the testimony, extended over parts of two consecutive days, was elicited from some fifteen different witnesses and occupies forty or fifty typewritten pages, apart from expert testimony. It covers defendant's habits of intoxication, industry, kindliness, and the like, for some fifteen years; certain injuries to his head; an incipient sunstroke; his poverty; the details of the crime as observed the morning after; and certain conversation and conduct of defendant at and about that time. A careful examination discloses no conflict or contradiction as to any material facts. In the light of the situation thus presented, we cannot avoid the conclusion that the trial judge was within the limits of his sound discretion in permitting the witnesses to give their opinions in response to the objected questions, and that no error was thereby committed.

4. The refusal of the court to give instructions to the jury upon the lower grades of homicide was without error. The case from beginning to end is absolutely barren of any suggestion to justify such instructions. The accused, upon his own confession and upon the facts and circumstances surrounding the crime, was guilty of wilful and premeditated murder unless he was insane and not guilty at all. It would have been improper for the court to have obscured the issue to be passed on by the jury by disquisition as to the lower grades of homicide.

5. Counsel assigns error upon the reception of the defendant's confessions in evidence, citing authority to the proposition that confessions must be shown to be voluntary before they should be accepted. It is difficult to believe in the sincerity of this assignment. The confessions were made at a time when the defendant was not under arrest. The

evidence is overwhelming and uncontradicted that they were made voluntarily, in the strongest sense of that word. The defendant, after due reflection, sought and availed himself of an opportunity to make them, and was not led thereto by any invitation or request,— far less by any threat or promise. Authority is also cited to the proposition that confessions alone should not suffice to sustain a conviction. Without passing upon the legal principle, it is sufficient to point out that the facts and circumstances surrounding the crime itself might well have sufficed to support this verdict. The accused was found in the room where the children were killed, the probability of any other person's commission of the act was negatived, and, amongst other circumstances, it appeared that the bottoms of the feet of the accused were stained with blood, showing conclusively that he had been alive and on his feet after the killing of the children.

The foregoing are all of the assignments of error which demand more than the most cursory comment. The complaint that defendant was not furnished with a list of witnesses is wholly without force, there being no rule of the common law entitling an accused thereto, and no statute in this state. Wherever that right exists, it is by virtue of express statute. Further, there appears to have been no demand, objection, or exception by reason of that omission. The error assigned, for that the court denied defendant the right to open and close the argument upon the issue of insanity, is untenable, for the reason that no exception was taken thereto and its propriety or impropriety is not before us on this record. The two instructions requested by the defendant on the issue of sanity were fully embodied in the general charge on that subject. Complaint is made upon the admission of certain testimony, *prima facie* connecting the accused with the offense, upon the issue of insanity. Whether proper or not as tending to establish defendant's guilt at that time, it was all relevant and admissible to show

.conduct bearing upon his mental condition. We have examined all of the references in brief of plaintiff in error to both admissions and exclusions of testimony claimed by him to be erroneous, and can find no error therein and no question worthy of discussion. The conduct of the trial was exceedingly liberal and favorable to the defense. In almost every instance the question of the admissibility of evidence was resolved in his favor, and he given the utmost latitude of defense. A careful examination of the record convinces us that the guilt of the defendant, as well as his mental responsibility, was overwhelmingly established, and that no error in the proceedings is presented to our attention.

*By the Court.*— Judgment affirmed.