STATE of Wisconsin, Plaintiff-Respondent,

v.

Gary R. BRUNETTE, Defendant-Appellant.†

Court of Appeals

*No. 97–2111–CR. Submitted on briefs March 9, 1998.—Decided June 4, 1998.*

(Also reported in 583 N.W.2d 174.)

†Petition to review denied.

432

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Kevin M. Schram* of *Schram Law Office*, Beaver Dam.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Susan M. Crawford,* assistant attorney general.

Before Eich, C.J., Vergeront and Deininger, JJ.

VERGERONT, J. Gary Brunette appeals from a judgment of conviction of two counts of first-degree sexual assault of a child contrary to § 948.02(1), Stats., and an order denying postconviction relief. Brunette contends: (1) the presence of Lauri Herrin on the jury

deprived him of his right to an impartial jury; (2) his trial counsel was ineffective because he failed to move to strike Juror Herrin for cause; (3) the evidence was insufficient to convict him on count one; and (4) the trial court erred in failing to individually poll another juror, Barbara McMurry, on count two. We conclude that: (1) Brunette has waived the challenge to Juror Herrin because he did not seek to have her removed from the jury; (2) trial counsel was not ineffective for failing to seek her removal; (3) the evidence was sufficient to support the convictions on count one; and (4) Brunette has waived the trial court's omission of polling Juror McMurry on count two.

## JURY SELECTION

*Background*

Brunette was charged with sexually assaulting two six-year-old girls, Jennifer H., the daughter of Brunette's live-in girlfriend, and Danielle N., Jennifer's friend and classmate.

On voir dire of the jury, the trial court asked whether any jurors, a close family member, or friend had been either the victim of a sexual offense or accused of one. After the court and counsel asked follow-up questions of those who answered yes, the court dismissed three jurors who stated they were unable to be fair because of those experiences, and a fourth juror, who, without reference to any personal experience, stated she could not be fair. Defense counsel's questions of the jurors focused initially on how the jurors would view evidence of prior sexual offenses by Brunette to determine whether they could heed a limiting instruction for the use of that evidence. Counsel did this because the trial court had made a pre-trial ruling

that the State could present evidence that Brunette was convicted of sexually assaulting two other children for the purpose of proving that any touching of the complainants' intimate parts was intentional. During the questioning of Herrin, the following exchange took place:

DEFENSE COUNSEL: Thank you. Let me ask, Ms. Magritz, let me ask you, you said that some-times—"once a thief always a thief," how do you feel about that?

JUROR MAGRITZ: It depends on the matter. I mean, people can change.

DEFENSE COUNSEL: Everybody agree with her? And I see you nodding Ms. Herrin.

JUROR HERRIN: Um-hum (affirmative).

DEFENSE COUNSEL: What if it's not—the prior offenses of the person are sexual assaults of children, do you think that you would apply the rule, once a sexual assaulter of children always a sexual assaulter of children; how do you feel about that?

JUROR HERRIN: I think there is always hope. I think people always can change, but the statistics in those cases are not very promising, sexual assaults against children, statistically.

DEFENSE COUNSEL: Well, if you are chosen as a juror today, could you decide this case solely on the evidence presented here and not conclude that a person who has offended in the past is likely to offend in the future and convict on that basis.

JUROR HERRIN: I can say that I would try to be objective, I would try to be unbiased. But can I state categorically that I would not be biased, I can't really guarantee that.

At this point the trial court stated that it understood that jurors come in with life experiences, and this is expected and desirable. However, the court explained, a juror who is unable to use evidence as instructed because of those experiences cannot sit on a jury. Defense counsel continued:

> DEFENSE COUNSEL: Let me just follow up, Ms. Herrin. If the Judge were to instruct you that you could consider evidence of past wrongs by the Defendant only one way but could not use it to conclude that the person was guilty solely because of that, could you follow that instruction?
>
> JUROR HERRIN: I would try very, very hard to do that.
>
> DEFENSE COUNSEL: I sense some hesitation.
>
> JUROR HERRIN: I have a daughter who is one to be. So I do not know how unbiased I could be in a situation, and I perhaps should have raised my hand earlier when the Judge asked if anyone had a personal bias. I do have a daughter who is 12. So how can I say that will not enter into my thoughts when I am trying to be objective. I am also trained and educated as a scientist, so I am supposed to be objective. Do you understand the struggle?
>
> DEFENSE COUNSEL: Yes, I appreciate your candor.
>
> JUROR HERRIN: Okay.

Defense counsel elicited responses from other jurors on the same point. One juror who indicated that he believed the evidence of a prior offense would mean that a defendant was a person likely to commit such acts and he would have a hard time following an instruction to the contrary, was dismissed by the court

for cause. When defense counsel finished his questions, the court asked if either counsel had any motions to make, and both answered no. Brunette did not use a peremptory challenge to strike Herrin, and she sat on the jury.

At the postconviction hearing, trial counsel first explained the theory of defense: Brunette had disclosed the prior sexual offenses to his girlfriend, and when their relationship soured because she was jealous of other women and suspected Brunette of infidelity, she took out her anger by turning innocent play with her child into a sexual assault. He then explained that one of his purposes in voir dire was to explore how the jury would react to the disclosures that Brunette had been convicted on two prior occasions of sexually assaulting children. He surmised from Herrin's response—while people can change, the statistics regarding sexual offense against children are not very promising—that she was expressing the view that most jurors and most people would have, and, trial counsel testified, this was "exactly the kind of . . . bias that [he] had to overcome, if [they] were to prevail on the theory of defense . . . ." He did not view the response as suggesting that Herrin knew more about sex offenders than the average juror.

Trial counsel testified that when Herrin answered that she could not "really guarantee" that she "categorically" would not be biased, he felt that he should explore that further to see how deep the bias went, but he believed she was expressing what he faced with most of the jurors. He was impressed with her candor and honesty, and she had good eye contact, which was a positive sign. He interpreted her subsequent answers as explaining that her personal bias arose from the fact that she had children and that would enter into her deliberations but she would try very hard to be objec-

tive. He did not make a motion to excuse her for cause, he testified, because he wanted her on the jury: she impressed him. She expressed what he felt was a natural concern of the entire panel. He perceived her as honest; she committed herself to being fair; and based on her demeanor, her eye contact and interaction with him, and what she said, he felt she would be a good juror under the circumstances of the particular case. The fact that she was a research technician, as revealed on the questionnaire, and referred to being a scientist in voir dire, was also positive in his view, because scientists are regularly required to put aside opinions and reach conclusions objectively.

Trial counsel testified that compared to other potential jurors, Herrin was more forthcoming than he would have expected about the natural concerns one would have about this case. He did not repeat the questions he asked her to every juror because he did not think he would get very far. He expected every juror to hold some bias against a twice-convicted child sex offender. He made a deliberate decision that he wanted Herrin on the jury, and if he were presented with the same situation today, he would make the same decision.

Trial counsel testified that Brunette sat next to him during the trial, and he gave Brunette a pad of paper and told him that he should pass notes if he had any comment during the examination of witnesses or jurors, because it was hard to talk. Counsel did not recall specifically asking Brunette about striking jurors, or Herrin in particular, but he did recall that Brunette gave him no input.

The trial court determined that trial counsel was not deficient in not moving to strike Herrin for cause and not using a peremptory challenge to exclude her.

Although the court did not expressly make findings based on trial counsel's testimony, it is implicit in the court's discussion and its conclusion that it accepted counsel's testimony as credible. The court also ruled that Brunette had waived the right to a new trial based on the court's failure to remove Herrin for cause, since Brunette did not ask the court to do that. Addressing the merits of the claim of Herrin's bias, the court stated that, based on the transcript, it did not think Herrin was biased and it would probably not have struck her for cause, had such a motion been made. The court also stated that it did not have a specific memory of this voir dire.

*Right to an Impartial Jury*

Brunette argues that he is entitled to a new trial because his constitutional right to an impartial jury was violated due to Herrin's presence on the jury. The right to an impartial jury is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution as well as the principle of due process. *State v. Louis,* 156 Wis. 2d 470, 478, 457 N.W.2d 484, 487 (1990). Herrin was biased, in Brunette's view, because she did not unequivocally promise that she would use the prior acts evidence only as instructed. Brunette recognizes that his counsel did not ask the trial court to remove Herrin for cause. However, he contends he did not waive the right to an impartial jury, because that right is one that the defendant must waive personally on the record, and Brunette did not do that.

The State agrees with the trial court that by failing to ask the court to remove Herrin for cause, Brunette has waived the right to directly challenge her presence

439

on the jury by post-verdict motion and on appeal, although the State recognizes that he can raise the issue of Herrin's bias in the context of the claim that trial counsel was ineffective for failing to seek to have her removed. The State relies on *State v. Olexa*, 136 Wis. 2d 475, 402 N.W.2d 733 (Ct. App. 1987), for its waiver argument.

In *Olexa*, the defendant argued she was denied an impartial jury because the panel was composed of taxpayers. (The defendant was charged with failure to file income tax returns.) We rejected this argument with this brief statement: "However, this objection was not voiced at voir dire. Therefore it is waived. *Cornell v. State*, 104 Wis. 527, 532, 80 N.W. 745, 746 (1899)." *Olexa*, 136 Wis. 2d at 482, 402 N.W.2d at 736. In *Cornell*, the supreme court held that counsel's statement prior to the jury being sworn that the jury was satisfactory "waived all such grounds of objection, even if otherwise tenable." *Cornell*, 104 Wis. at 532, 80 N.W. at 746. For that reason, the court did not consider the defendant's claim that it erred in denying his motion to strike several jurors on the ground they had already formed opinions concerning the crime.

In *Olexa*, we did not cite another case that relied on *Cornell* and is also on point—*Okerhauser v. State*, 136 Wis. 111, 116 N.W. 769 (1908). In *Okerhauser*, the supreme court rejected a challenge to a juror's qualification to serve based on inadequate knowledge of English because the defendant failed to object to the juror in the trial court. *Okerhauser*, 136 Wis. at 113, 116 N.W. at 770.

Although our discussion in *Olexa* was brief, we decided that the juror bias claim was waived if not presented to the trial court. We see no reason to deviate from that rule. We have recently held that a challenge

under *Batson v. Kentucky*, 476 U.S. 79 (1986), to peremptory challenges striking jurors is waived if not made before the jury is sworn. *State v. Jones*, 218 Wis. 2d 599, 601, 581 N.W.2d 561, 562 (1998). One of the reasons for our holding in *Jones* was the recognition that Wisconsin case law has emphasized the requirement of timely objection in order to preserve a claim, a requirement that allows the trial court and prosecutor to correct errors, thereby avoiding any unnecessary reversals. *Id.* at 603, 581 N.W.2d at 563. Another reason for our holding in *Jones* was that the decision about whom to select as jurors should be made when the recollections of counsel and the court are fresh. *Id.* at 602, 581 N.W.2d at 563.

The validity of these reasons is vividly illustrated in this case because of the importance of the trial court's role in deciding whether to dismiss a juror due to partiality. The decision is committed to the trial court's discretion. *Hammill v. State*, 89 Wis. 2d 404, 415–16, 278 N.W.2d 821, 826 (1979). We defer to the trial court's decision particularly because of the court's ability to judge the demeanor of the juror, which is an important part of determining a juror's impartiality. *Id.* at 16, 278 N.W.2d at 826. We reverse the determination of a trial court that a prospective juror can be impartial "only where bias is 'manifest.' " *Louis,* 156 Wis. 2d at 478–79, 457 N.W.2d at 488. As the trial court candidly acknowledged at this postconviction hearing, it could not specifically remember the voir dire of Herrin and had to rely on the transcript, concluding that it "didn't think [it] would have [dismissed her for cause]." We are therefore without the contemporaneous impressions of the trial court and its reasoning, which

would have been preserved on the record had Brunette made a motion to strike Herrin for cause.

■

We conclude, following *Olexa*, that a defendant waives an objection to a juror's bias if no motion is made to the trial court to remove the juror for cause. However, *Olexa* does not address Brunette's argument concerning the requirements for a valid waiver: he contends that it must be made personally by the defendant on the record. Brunette argues that the right to an impartial jury is tantamount to the right to a trial by jury, and the standard for valid waivers of the two rights should be the same. He relies on *State v. Livingston*, 159 Wis. 2d 561, 569, 464 N.W.2d 839, 842–43 (1991), which holds that the decision to waive a jury trial must be expressly stated by the defendant on the record and may not be inferred or presumed. According to Brunette, this record does not demonstrate that he personally assented to a jury with Herrin's presence in a manner consistent with the *Livingston* standard.

*Livingston* has no application to this case, even by analogy. The ruling in *Livingston* was based on the interpretation of a statute, § 972.02(1), STATS.,[1] which provides that a criminal defendant must be tried by a jury of twelve unless the defendant waives a jury in writing or by a statement in open court. The court held that the defendant personally must make the statement in open court; a statement by trial counsel does

---

[1] Section 972.02(1), STATS., provides in full:

(1) Except as otherwise provided in this chapter, criminal cases shall be tried by a jury drawn as prescribed in s. 756.096 (3) (a) or (am), whichever is applicable, and ch. 805, unless the defendant waives a jury in writing or by statement in open court or under s. 967.08 (2) (b), on the record, with the approval of the court and the consent of the state.

not comply with the statute. *Livingston*, 159 Wis. 2d at 565, 569–70, 464 N.W.2d at 842–43. Because of the statutory basis of the court's opinion, it does not assist our analysis.

There is, however, a line of cases holding that certain decisions regarding a criminal case are considered so fundamental that they must be waived personally by the defendant, even where no statute requires a personal waiver. *See State v. Albright*, 96 Wis. 2d 122, 129–30, 291 N.W.2d 487, 490 (1980), *cert. denied*, 449 U.S. 957 (1980). These decisions include whether to plead guilty, whether to request a trial by jury, whether to appeal, whether to forgo the assistance of counsel, and whether to obtain counsel and refrain from self-incrimination. *Id.* at 130, 291 N.W.2d at 490.[2] These decisions are considered to be so fundamental that they go to the very heart of the adjudicatory process and may only be waived in open court, on the record by the defendant personally. *Id.*

With these few exceptions, when a defendant accepts counsel, the defendant delegates to counsel the decision whether to assert or waive constitutional rights, *Albright*, 96 Wis. 2d at 132, 291 N.W.2d at 492, as well as the myriad tactical decisions an attorney must make during a trial. *See Wainwright v. Sykes*, 433 U.S. 72, 93 (1977) (Burger, J. concurring). The rationale for considering most decisions to be delegated to counsel is that they require the skill, training and experience of the advocate and therefore the advocate must ultimately have the power to make the decisions. Many tactical and strategic decisions must be made during proceedings under circumstances that allow for

---

[2] In *State v. Wilson*, 179 Wis. 2d 660, 669, 508 N.W.2d 94, 47 (1993), we recognized that a defendant's right to testify should also be treated as fundamental in nature.

limited or no consultation with the client. *See State v. Harper*, 57 Wis. 2d 543, 549, 205 N.W.2d 1, 5 (1973); *see also* commentary to the ABA STANDARDS FOR CRIMINAL JUSTICE, § 4–5.2 (1980). When the decision whether to assert or waive a right is delegated to counsel, it may be waived by counsel; the defendant need not personally make a statement waiving the right. *See State v. Jackson*, 188 Wis. 2d 537, 542–43, 525 N.W.2d 165, 167–68 (Ct. App. 1994) (decision whether to poll jury is delegated to counsel and defense counsel's failure to request poll is waiver; no need for court to inquire personally of defendant).

We conclude that the decision whether to move to strike a potential juror for cause should not be added to those few, fundamental decisions that are reserved personally for the defendant and must be waived personally by the defendant. Whether to move to strike a particular person from the panel is not a decision that "goes to the very heart of the adjudicatory process." *Albright*, 96 Wis. 2d at 130, 291 N.W.2d at 490. The decision as to each potential juror involves a number of considerations and the ultimate decision depends to a large extent on the skill and experience of the attorney. The decisions must be made during voir dire, the particular factors involved in the decision usually cannot be anticipated, and the circumstances do not, as a practical matter, lend themselves to a consultation between the attorney and client with respect to each potential juror.

██

Our conclusion does not, of course, mean that a defendant may have no input in the decision. Trial counsel's testimony in this case demonstrates an appropriate effort to have the client participate during voir dire and trial by providing a note pad and telling

the client to write notes if he wants to communicate. However, we are persuaded that the ultimate decision whether to move to strike a potential juror for cause is for counsel to make, and counsel's failure to so move is a waiver of the defendant's right to object to that person sitting on the jury. There need be no statement on the record by the defendant that he consents to each juror that is sworn in.

Trial counsel's failure to move to strike Herrin for cause therefore waives Brunette's right to object to her presence on the jury. However, Brunette may assert a claim of ineffective assistance of counsel based on defense counsel's failure to object to her presence. *See Albright*, 96 Wis. 2d at 133, 291 N.W.2d at 492 (if defense counsel waives defendant's right to testify and that decision is prejudicial, proper claim is ineffective assistance of counsel). We turn to that claim now.

*Right to Effective Assistance of Counsel*

Brunette argues that counsel's failure to move that Juror Herrin be excused for cause violated his right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. He contends that counsel's failure to secure an unequivocal commitment is deficient performance under *State v. Traylor*, 170 Wis. 2d 393, 489 N.W.2d 626 (Ct. App.1992), and he was prejudiced by that deficient performance.

■

To prevail on an ineffective assistance of counsel claim, the defendant must show that counsel's actions or inaction constituted deficient performance and that the deficiency caused him prejudice. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Deficient performance requires a showing that counsel's

representation fell below the objective standard of reasonableness. *Id.* at 688. The court is to review the attorney's performance with great deference and the burden is placed on the defendant to overcome the strong presumption that counsel acted reasonably within professional norms. *State v. Johnson,* 153 Wis. 2d 121, 127–28, 449 N.W.2d 845, 848 (1990).

■

Whether an attorney's actions constitute ineffective assistance of counsel is a question of mixed fact and law. *Johnson,* 153 Wis. 2d at 127, 449 N.W.2d at 848. What the attorney did or did not do is a question of fact, and the trial court's determination on that matter will not be overturned unless clearly erroneous. *Id.* The ultimate question of whether that conduct constitutes constitutionally deficient representation or prejudice is a question of law, which this court reviews de novo. *Id.* at 128, 449 N.W.2d at 848.

We conclude that trial counsel's decision not to move to strike Herrin for cause[3] was a reasonable and deliberate tactical decision and does not constitute deficient performance. We disagree that the facts in *Traylor* are the same as in this case.

In *Traylor,* five persons on voir dire gave answers indicating their own concepts of justice, and defense counsel failed to ask follow-up questions to determine

---

[3] In his brief on appeal, Brunette describes trial counsel's deficient performance as "failure to seek a substitute for Herrin." Before the trial court, Brunette argued that the deficient performance lay in failure both to move to strike for cause and to use a peremptory challenge to exclude her. Since Brunette's counsel did not move to strike Herrin for cause, it seems to add nothing to say that counsel was ineffective for not using a peremptory strike to exclude her. It does not alter the analysis or our conclusion.

whether they could follow the law as instructed by the court rather than their own conceptions of justice. *Traylor*, 170 Wis. 2d at 399, 489 N.W.2d at 628. Defense counsel did not move to strike any of them for cause, but did use peremptory challenges to strike four. *Id.* We concluded that defense counsel's performance was deficient because he failed to ask these persons follow-up questions, thereby unnecessarily depleting the available number of peremptory challenges. *Id.*[4]

In *Traylor*, the defense counsel did not follow up with any questions in order to determine the jurors' impartiality. In this case, when Herrin stated that she would try to be objective but she could not categorically guarantee that she would not be biased, defense counsel did ask follow up questions and he elicited further information to help him evaluate Herrin's ability to be fair. She stated that she "would try very very hard" to follow the court's instruction on the limited use of the past wrongs. She explained the source of her reserva-

---

[4] Although we concluded in *State v. Traylor*, 170 Wis. 2d 393, 489 N.W.2d 626 (1992), there was deficient performance, we did not reverse the conviction because we decided that Traylor did not prove that he was tried by a partial jury: four of the jurors in question were removed by peremptory challenges and as to the fifth, we held there was no showing of prejudice. *Traylor*, 170 Wis. 2d at 400–07, 489 N.W.2d at 629. However, the supreme court in *State v. Ramos*, 211 Wis. 2d 12, 24–25, 564 N.W.2d 328, 334 (1997), held that a defendant is entitled to a new trial if forced to use a peremptory strike to remove a juror who is actually biased and should have been dismissed for cause, because otherwise the defendant is arbitrarily deprived of the statutory right to seven peremptory challenges. The *Ramos* court distinguished *Traylor* because *Traylor's* analysis of prejudice was based on whether the jury was fair and impartial, not whether the defendant's statutory right to peremptory challenges was violated. *Id.* at 24, 564 N.W.2d at 333–34.

tion: she had a daughter and she could not be sure that would not enter into her thoughts when she was trying to be objective. On the other hand, she stated she is trained and educated as a scientist to be objective.

Based on this additional information, and Herrin's demeanor, including her eye contact with him, Brunette's counsel formed a definite view that he wanted Herrin on the jury. What trial counsel wanted in the jurors, he explained in his testimony, was the ability to be open to considering the theory of defense, in spite of the evidence of the prior offenses. His assessment of Herrin was: she was honest when she said she would try very hard to follow the instructions and be fair; she was expressing feelings most jurors had but were not candid enough to express; and her training and experience as a scientist made it more likely she would be able to be objective. He decided that Herrin would be a good juror in this case. In contrast, there was no testimony of Traylor's counsel's strategic reasons for keeping the jurors in question on the jury and, in fact, Traylor's counsel used peremptory strikes to remove four of them.

██

We reject Brunette's premise that it is deficient performance not to seek to remove a potential juror who states he or she cannot categorically guarantee impartiality, regardless of the other information revealed by the juror and evaluated by the trial counsel. Brunette's counsel was functioning exactly as proficient counsel should: he followed up with questions to gather more information about the type of person Herrin was—and the type of juror she would likely be—and then made a decision, in the context of the particular case and the particular theory of defense, whether it would be helpful to the defense to

have her on the jury. The decision trial counsel made—that he wanted her on the jury and therefore was not going to seek to have her removed—was a reasonable one under all the circumstances.

## SUFFICIENCY OF EVIDENCE

The jury was instructed that in order to find Brunette guilty of first-degree sexual assault of a child, it must find beyond a reasonable doubt that: (1) the defendant had sexual contact with the person named; (2) for the purpose of sexually gratifying or arousing him; and (3) the person named was under thirteen at the time. The instructions defined sexual contact as

> any intentional touching by the defendant of the groin, vagina, or pubic mound of the person named in the charge. This may be done directly or it may be through the clothing. The touching may be done by any body part or by any object, but it must be an intentional touching. . . .[5]

Brunette argues that the evidence was insufficient to prove that he touched Danielle in the groin, vagina or pubic mound. The trial court determined that it was.

---

[5] Brunette was charged with having sexual contact with a person under thirteen. Section 948.02(1), STATS. Section 948.01 (5), STATS., provides: " 'Sexual contact' means any intentional touching by the complainant or the defendant, either directly or through clothing by the use of any body part or object, of the complainant's or defendant's intimate parts if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant." "Intimate body" parts are "the breast, buttock, anus, groin, scrotum, penis, vagina or pubic mound of a human being." Section 939.22(19), STATS.

Danielle testified that that she was seven years old and that she stayed overnight with Jennifer one night in December of the preceding year. Danielle identified Brunette as living at Jennifer's house then. Danielle testified that the next morning when she was getting dressed, Brunette came into Jennifer's bedroom in the basement and grabbed Danielle by the ankles causing her pants to fall down. He took her upstairs to Jane's room while Jane was in the kitchen.[6] Danielle described what followed:

Q And what happened when you got into Jane's room.

A Well, my pants fell down and Gary laid me down on the bed, and my pants were still down and he touched my private.

Q Now, when you say he touched your private, Danielle, what do you mean by your "private"?

A My potty place.

Q Okay. Is that between your legs?

A Yes.

On cross-examination, defense counsel asked Danielle about a statement she gave to the police officer:

Q And he [the officer] asked you about whether—he asked you about the place where he [Brunette] touched you, didn't he?

A Yes.

Q And he asked you whether it was actually where you go potty or just beside it. Do you remember him asking you that?

---

[6] Jane is Jennifer's mother.

450

A No.

Q Do you remember telling the policeman that it was beside it, beside where you go potty?

A Yes.

On redirect, Danielle testified that her underwear had come down with her pants and Brunette touched her skin.

David Haberman, a juvenile officer, testified he interviewed Danielle. She initially told him that Brunette touched her "privates." He asked her "whether or not she was touched where she went potty, or just beside that," and she answered "beside it." He asked her immediately after that, "was this on your private place," and she answered that it "was right next to it." Danielle also told him that it was a place "where other people shouldn't be touching you" and that it was a place that would be covered by a bathing suit if she were wearing one.

Brunette testified that he remembered one occasion when Danielle had stayed overnight and in the morning he had been tickling Jennifer and Danielle in Jennifer's room in the basement. He and Danielle ended up in an upstairs bedroom alone, with Danielle on the bed, and he went to pull up her pants, which came down when he swung her onto the bed by her ankles. Brunette testified:

> BRUNETTE: I went to do that [pull up her pants] and she moved, and then I hit her right next to where her leg–
>
> D.A.: Did you say anything to her at that point?
>
> BRUNETTE: No. I just stepped back and I was kind of like shocked somewhat, and she ran off before I could say anything.

D.A. You didn't just continue tickling her at that point?

BRUNETTE: No.

In reviewing a jury verdict, we may not overturn the verdict for insufficient evidence unless the evidence, viewed most favorably to the State and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonable, could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757–58 (1990). In viewing the evidence, we draw all reasonable inferences supporting a finding of guilt. *Id.* at 504, 451 N.W.2d at 756. We defer to the jury's resolution of issues of credibility, weight of the evidence, and conflicts in testimony. *Id.* at 506, 451 N.W.2d at 757. Applying this standard, we conclude that a reasonable jury could find Brunette guilty of intentionally touching Danielle on the groin, vagina or pubic mound.

Brunette acknowledges that, based on the evidence of the prior sexual offense, if the jury found that Brunette touched Danielle on the groin, vagina or pubic mound, it was entitled to draw two inferences: that the touching was intentional and that it was for the purpose of sexual arousal. However, he contends that there was no evidence that Danielle used the terms "potty place" and "privates" to describe her groin, vagina or pubic mound, and no evidence of the part of her body her bathing suit covered. Brunette suggests that either a parent or professional familiar with a child's special language must testify that the child consistently uses the word "privates" or "potty place" to refer to a specific place on her body, for example, her vagina, or the child should be asked to identify the

place on a diagram or model, or point to the place on her body, either in or out of court.

We disagree that, without the additional evidence Brunette suggests, the evidence presented was too vague to permit a reasonable inference that Brunette touched Danielle on her "groin, vagina or pubic mound." Since neither the statute nor the jury instruction defines these terms, we give them their ordinary meaning, and that may be determined from a recognized dictionary. *See State v. Morse*, 126 Wis. 2d 1, 374 N.W.2d 388 (Ct. App. 1985). In *Morse*, we defined "vagina" as "female external genitalia, or vulva," and held that the victim's testimony that the defendant touched her "in between my legs in the crotch" was sufficient to support a guilty verdict even though she did not define "crotch." *Morse*, 126 Wis. 2d at 5, 7, 374 N.W.2d at 390–91.[7] The ordinary meaning of groin is "the crease or hollow at the junction of the inner part of each thigh with the trunk, together with the adjacent region and often including the external genitals." *See* THE AMERICAN HERITAGE COLLEGE DICTIONARY 600 (3rd ed. 1993). The ordinary meaning of "pubic mound" (or "mons pubic") is the "eminence at the lower part of the abdomen, just above the reproductive or sex organs." *See* 3 J.E. SCHMIDT, M.D. ATTORNEY'S DICTION-ARY OF MEDICINE M–246 (1996). Danielle testified that her "private" was her "potty place," and that was "between her legs." This is sufficiently specific for a

---

[7] The jury instructions in *State v. Morse*, 126 Wis. 2d 1, 6, 374 N.W.2d 388, 390 (Ct. App. 1985), used the term "vaginal area" and we concluded that a reasonable jury would construe this as the "female genitalia," which was part of the definition we adopted for "vagina."

reasonable jury to conclude that Brunette touched her on her groin, vagina or pubic mound.

Brunette points to his own testimony as adding to the vagueness of the evidence on where he touched Danielle. Of course, the jury could have decided to believe Danielle rather than Brunette if their testimony conflicted on this point. But a reasonable jury could also have concluded that Brunette's testimony supported a conviction. His truncated statement that he "hit her right next to where her leg—" plus his testimony that he was shocked and she ran off, permit a reasonable inference that he touched her on the groin.

Brunette also appears to argue that Danielle's statement to the police and the investigator that Brunette touched her "beside" where she went potty, or "right next to her private" makes her testimony unacceptably vague. However, it was for the jury to reconcile any conflicts in Danielle's statements. The jury could choose to believe her trial testimony that "he touched her private . . . her potty place" rather than other statements that it was "beside" her potty place or "right next to" her private. Or the jury could believe the latter statements and still draw a reasonable inference that, if Brunette did not touch her directly on her vagina, he did, beyond a reasonable doubt, touch her groin or pubic mound. We are satisfied that the evidence permitted a reasonable jury to convict Brunette on this charge, as this jury did.

## INDIVIDUAL POLL OF JUROR McMURRY

After the court read the verdicts of guilty for count I and count II, it asked any juror who disagreed with the verdict to raise his or her hand. No hands were raised. Defense counsel asked that the jurors be polled individually on each count. The court then asked each

juror individually whether the verdict read for each count was his or her verdict, except that, according to the transcript, the court did not ask Juror McMurry whether the verdict read for count II was her verdict. Defense counsel did not object to this omission. At the hearing on the postconviction motions, the trial court found that the transcript was correct and that it did not individually ask Juror McMurry about count II. The court's comments indicate that this was an oversight on its part. The trial court concluded that there was no indication that the verdict was not unanimous and therefore Brunette was not entitled to a new trial on this ground.

Brunette argues on appeal that he has an absolute right to the individual polling of the jury upon request, under *State v. Wojtalewicz*, 127 Wis. 2d 344, 379 N.W.2d 338 (Ct. App. 1985), and because he did not receive that for every juror, he is entitled to a new trial. In *Wojtalewicz*, after the court asked the jurors to raise a hand if any disagreed with the verdicts just read and none raised a hand, trial counsel requested that the jurors be polled individually. *Wojtalewicz*, 127 Wis. 2d at 346, 379 N.W.2d at 339. The trial court refused to do so. We held that a defendant has the right, when timely asserted, to have the jurors individually polled on their verdict, and if a trial court refuses to do that, it is reversible error. *Id.* at 350, 379 N.W.2d at 340. *Wojtalewicz* does not address the question presented here: is it reversible error when the trial court individually polls the jurors at defense counsel's request, but inadvertently fails to poll one juror on one count, if defense counsel does not object? We conclude that the failure to object and bring this omission to the trial court's attention waives any error.

In *State v. Cydzik*, 60 Wis. 2d 683, 695–96, 211 N.W.2d 421, 429 (1973), the supreme court held that the defendant had waived his right to an individual poll of the jury on a count of armed robbery. Defense counsel asked for an individual polling. The court polled the jurors individually on the count of first-degree murder but not on the count of armed robbery. When the trial court asked if there was anything else, defense counsel answered "no." *Cydzik*, 60 Wis. 2d at 696, 211 N.W.2d at 429. The supreme court, after observing that defense counsel's failure to ask for a polling on this latter count was probably related to the concession of guilt on that count counsel made in closing argument, stated: "In any event, defendant's trial counsel made no request for any additional polling of the jury when given the opportunity to so request. Any deficiency or incompleteness was thus and then waived." *Id.*

Although the facts in *Cydzik* are somewhat different in that there defense counsel failed to ask for a polling of the second count in response to the court's question, and in this case defense counsel failed to asked for a polling of one juror on the second count when the trial court inadvertently failed to do so, the principle is the same: Failure to bring the deficiency or incompleteness of an individual polling undertaken by the trial court to the attention of the trial court waives any claim of error based on that deficiency or incompleteness. Since the assertion or waiver of rights with respect to polling the jury are among those delegated to counsel and may be waived by counsel, *Jackson*, 188 Wis. 2d at 543, 525 N.W.2d at 168, defense counsel's

failure to bring the omission to the court's attention constitutes a waiver by Brunette.[8]

*By the Court.*—Judgment and order affirmed.

■■■■■

[8] We do not understand Brunette to argue that he is entitled to a new trial because the verdict was not unanimous. Although the purpose of an individual polling of the jury is to test the unanimity of the verdict, it is not the only method for assuring that the verdict is unanimous. *State v. Yang*, 210 Wis. 2d 725, 745, 549 N.W.2d 769 (Ct. App. 1996). It follows that the lack of an individual polling, or the existence of an incomplete individual polling, does not, in itself, mean that the verdict was not unanimous. We agree with the trial court that there is no indication on this record that the verdict was not unanimous.