STATE of Wisconsin, Plaintiff-Respondent,

v.

William F. WILLIAMS, Defendant-Appellant.†

Court of Appeals

*No. 99–0812–CR. Submitted on briefs November 15, 1999.—Decided May 25, 2000.*

2000 WI App 123

(Also reported in 614 N.W.2d 11.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven P. Weiss,* state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Daniel J. O'Brien,* assistant attorney general, *James E. Doyle,* attorney general, and *Matthew Moeser,* assistant district attorney.

Before Dykman, P.J., Eich and Deininger, JJ.

¶ 1.  DEININGER, J.  William Williams appeals a judgment which convicted him of disorderly conduct, and an order which denied postconviction relief from the judgment.[1] Williams claims that the trial court erroneously exercised its discretion in refusing to allow him to enter an *Alford* plea,[2] thereby depriving him of the benefit of his plea agreement with the State. Williams also cites as errors the trial court's failure to grant an adjournment to allow him to secure the presence of a defense witness, and the court's failure to remove a juror for cause. Finally, if we conclude the trial court did not err, Williams asks us to determine that his trial counsel provided ineffective representation with respect to the impaneling of the jury, or to grant a new trial in the interest of justice due to the absence of the defense witness.

¶ 2.  We conclude that the trial court did not err in declining to adjourn the trial, and that Williams may not now raise as error the court's failure to remove a juror to whom he did not timely object. We also conclude that Williams's trial counsel was not ineffective for failing to move to strike the juror for cause, and we decline to exercise our discretionary reversal authority on account of the missing defense witness. Accordingly, we conclude that Williams was convicted following an error-free trial, and thus, his claim of error with

---

[1] This appeal was originally submitted to one member of this court for decision under WIS. STAT. § 752.31(2)(f) (1997–98). However, the chief judge ordered that the appeal be decided by a three-judge panel. *See* WIS. STAT. RULE 809.41(3) (1997–98). All references to the Wisconsin statutes in this opinion will be to the 1997–98 version unless otherwise noted.

[2] *See North Carolina v. Alford,* 400 U.S. 25 (1970).

respect to the trial court's refusal to accept his tendered *Alford* plea comes too late. We therefore affirm Williams's conviction for disorderly conduct and the order denying postconviction relief.

## BACKGROUND

¶ 3. The State charged Williams with three offenses: disorderly conduct and violating a domestic abuse injunction, both misdemeanors, and battery to a police officer, a felony. All three offenses were alleged to have been committed while Williams was a repeat offender, thereby enhancing the potential penalties Williams faced if convicted of any or all of the offenses. Williams negotiated a plea agreement with the State which called for him to plead other than not guilty to the three offenses in return for the State's sentencing recommendation of not more than two years of imprisonment. Because Williams was also facing probation revocation proceedings, he opted to tender an *Alford*-type plea so as not to be deemed to have admitted his commission of the new offenses.[3] Williams's counsel informed the court of his intention to enter an *Alford* plea, to which the court responded, "I won't accept it." Counsel attempted to inform the court that he thought "there is strong evidence" to support the plea, but he was interrupted by the following comment from the court:

> I don't care. I've had too many bad experiences with *Alford* pleas. In fact, I've never had a decent experi-

[3] Whether Williams's conviction on the basis of an *Alford* plea would impact his probation revocation proceedings differently than would a conviction based on a plea of guilty is not at issue in this appeal. *See, e.g., State ex rel. Warren v. Schwarz,* 219 Wis. 2d 615, 631–32, 579 N.W.2d 698 (1998).

ence with an *Alford* plea. I have just made a policy I
will not accept one. It's that simple.

Counsel then informed the court that there was therefore no plea agreement, and the case proceeded to a
jury trial.

¶ 4.  On the day of trial, Williams moved for an
adjournment so that he could obtain the presence of
Michael Shea, who was alleged to be an alibi witness.
The court denied the request for an adjournment but
did issue an arrest warrant for the missing witness.
Police were unable to locate Shea while the trial proceeded, however. During a recess, defense counsel told
the court that he had been misinformed by the sheriff's
department earlier in the week that Shea had been
served with a subpoena for the trial date, when in fact
he had not been served. Counsel then provided the
following offer of proof as to what Shea's testimony
would be:

> [T]hat on the afternoon in question Mr. Williams
> was with Mr. Shea at the apartment of this Lori
> Phillips helping her to move stuff about. And that
> [an investigator's report] further goes on to state
> that Mr. Shea did report to the police, I believe
> Officer Troia, that he suspected that the defendant
> might have stolen a bracelet from him. That is the
> essence of the report.

When the court inquired what purpose the testimony
would serve, counsel explained that Williams's presence in another apartment, as opposed to his wife's
apartment where the charged misdemeanors were
alleged to have occurred, was in the nature of an alibi.
Williams's counsel acknowledged that he was not sure
if he could establish the specific hour of the day that
Shea and the defendant were together, and he later

stipulated that Shea himself would be unable to testify as to a time more specific than "in the p.m." of the date of the offenses. Shea's presence was not procured during the course of the trial, but he did appear and give testimony during postconviction proceedings.

¶ 5. During voir dire, one prospective juror acknowledged that she had been a victim of domestic violence. The prosecutor then asked the juror whether there might be "something about that experience that would make it difficult for you to put that aside and listen to the witnesses and judge them fairly?" The juror responded, "[i]t would be very difficult," but she "could try." No follow-up questions were put to this juror by either counsel or the court, and Williams used a peremptory strike to remove the juror from the panel. During postconviction proceedings, Williams's counsel testified that there were two reasons why he neither pursued follow-up questions with the juror in question nor moved to strike her from the jury. Counsel stated that he "already had an opinion" that he was going to strike her peremptorily. He explained that he strongly prefers not to strike jurors for cause if he can avoid doing so because it tends to cause embarrassment for the juror in question, and that he doesn't want the remaining jurors to be negatively affected by the challenge. Also, in this case, counsel stated that he particularly "didn't want the jury to think that I was uncomfortable with someone who would have been through that type of experience. . . ."

¶ 6. The jury found Williams guilty of the two misdemeanor offenses, but the jurors were unable to reach a verdict on the felony charge of battery to a police officer. The trial court granted Williams's postconviction motion to set aside the jury's verdict on the charge that Williams had violated a domestic abuse

injunction. The court denied his motions for relief, however, that were grounded on his counsel's alleged ineffectiveness in failing to strike the juror, the court's refusal to accept his *Alford* plea, and the court's failure to grant his request for a continuance in order to obtain Shea as a witness. Williams appeals the judgment convicting him of disorderly conduct and the order denying relief from the conviction.

## ANALYSIS

¶ 7. The threshold issue in this appeal is whether we should reverse Williams's conviction on account of the trial court's allegedly erroneous refusal to accept his *Alford* plea.[4] Williams tendered the plea in order to effectuate a plea agreement with the State. He argues that the trial court's statement that "I have just made a policy" to reject *Alford* pleas demonstrates an erroneous exercise of discretion. Williams also asserts that it "would be very simple" for this court to vacate the conviction and sentence and "remand the case for further

---

[4] We have recently described an *Alford* plea as follows:

> An *Alford* plea is a plea in which the defendant pleads either guilty or no contest, while either maintaining his innocence or not admitting having committed the crime. *See State v. Garcia*, 192 Wis. 2d 845, 856, 532 N.W.2d 111, 115 (1995); *see also State v. Salentine*, 206 Wis. 2d 419, 423–25, 557 N.W.2d 439, 441–42 (Ct. App. 1996). Our supreme court has recognized that an *Alford* plea is a legally permitted form of a plea, which a court may in its discretion accept when the court determines there is strong evidence of actual guilt and the plea is knowing, voluntary and intelligent. *Garcia*, 192 Wis. 2d at 859–60, 532 N.W.2d at 116. A defendant has no constitutional right to the acceptance of an *Alford* plea. *North Carolina v. Alford*, 400 U.S. 25, 39 n.12 (1970).

*State ex rel. Warren v. Schwarz*, 211 Wis. 2d 710, 717–18, 566 N.W.2d 173 (Ct. App. 1997), *aff'd*, 219 Wis. 2d 615, 579 N.W.2d 698 (1998).

proceedings on all three counts consistent with the final plea offer that Williams originally attempted to accept." We disagree.

¶ 8.   Even if we were to determine that the trial court erred in rejecting the tendered *Alford* plea, the error would not justify setting aside the results of Williams's jury trial. This is because any error stemming from a trial court's refusal to accept an *Alford* plea, like error in binding over a defendant following a preliminary hearing, is cured when a defendant receives a fair and error-free trial. *See State v. Webb*, 160 Wis. 2d 622, 467 N.W.2d 108 (1991).

¶ 9.   The supreme court decided in *Webb* "that a conviction resulting from a fair and errorless trial in effect cures any error at the preliminary hearing," and that "a defendant who claims error occurred at his preliminary hearing may only obtain relief before trial" by petitioning for leave to appeal the bindover decision. *Id.* at 628. The court concluded that reversing a conviction following a "fair and errorless trial," only to return to the preliminary hearing stage of the proceedings, would serve very little purpose. The court noted that, because a jury had found the defendant guilty beyond a reasonable doubt (a verdict which the defendant in *Webb* did not challenge), it made no sense to remand for the purpose of determining whether the State could establish probable cause that he had committed the offense. *See id.* at 629–30.

¶ 10.   By the same token, we see little point in reversing Williams's conviction and remanding for the purpose of requiring the trial court to consider whether the State possessed "strong evidence" of Williams's guilt, such that he should have been convicted without a trial, notwithstanding the "protestation of innocence"

which his tendered *Alford* plea communicates (see footnote 4). As the State notes, if we were to reverse and remand on this ground, the trial court might again elect not to accept the *Alford* plea, perhaps making a better record of its reasons for that decision. In that event, Williams should not be able to obtain a new trial on the disorderly conduct charge, provided we determine that his first trial was "fair and errorless." Conversely, if the trial court were to now accept the *Alford* plea, Williams would again stand convicted of disorderly conduct. The only question then remaining would be the appropriate sentence, and Williams does *not* argue on appeal that his sentence on the disorderly conduct charge was excessive or otherwise an erroneous exercise of discretion.

¶ 11. Thus, it is not clear what purpose would be served by a reversal and remand for the trial court to reconsider the *Alford* plea, except that Williams apparently believes he might fare better on resentencing, and of course, the judicial and prosecutorial resources expended on the two-day jury trial will have been for naught. *See Webb,* 160 Wis. 2d at 629. Williams argues, however, that he has been prejudiced by losing "the opportunity to benefit from accepting the plea bargain" which the State had offered him. We acknowledge that the supreme court has recognized the value to the criminal justice system of plea agreements in general, and *Alford* pleas in particular. *See State v. Garcia,* 192 Wis. 2d 845, 856–57, 532 N.W.2d 111 (1995). We also agree with Williams that, even though the sentencing court would not have been bound to follow the State's recommendation for a total of no more than two years imprisonment on all three offenses, such a recommendation would have been a key factor at sentencing, the

loss of which is a detriment to Williams.[5] *See State v. Smith*, 207 Wis. 2d 258, 270, 558 N.W.2d 379 (1997).

¶ 12. Nonetheless, we conclude that a defendant's opportunity to obtain the benefit of a plea bargain can be adequately protected by requiring a defendant who believes his tendered plea has been improperly rejected to seek leave for an interlocutory appeal. Under WIS. STAT. § 808.03(2), this court may accept an interlocutory appeal whenever we determine that to do so would materially advance the termination of the litigation, protect the petitioner from substantial or irreparable harm, or clarify further proceedings in the litigation or an issue of general importance in the administration of justice. Also, as the supreme court noted in *Webb*, in exercising our discretion whether to grant interlocutory review, we do so "on the basis of the merits of the case." *See Webb*, 160 Wis. 2d at 633 n.8. In short, if a defendant shows this court that a criminal prosecution could be promptly terminated on the basis of an agreement with the State premised on an *Alford* plea, that the loss of the plea bargain would constitute substantial harm to the defendant, and that the record discloses an apparently arbitrary rejection of the plea,

---

[5] The court sentenced Williams to three years in prison on the repeater-enhanced disorderly conduct conviction. Although not a part of the present record, the parties have informed us that the State has recharged Williams with violating a domestic abuse injunction and felony battery to a peace officer, the two companion charges which were dismissed from this case. These charges are awaiting trial in the circuit court. If Williams is subsequently convicted of one or both of these offenses, he could receive additional prison time.

potential grounds for interlocutory review will have been stated.[6]

¶ 13.   For the foregoing reasons, we conclude that if Williams was found guilty following a "fair and error-less" trial, he may not now claim error in the trial court's rejection of his tendered *Alford* plea. We must next determine, therefore, whether Williams was in fact convicted following an errorless trial. If he was, he is not entitled to relief from his conviction. If his trial was not error-free, however, we would grant relief for that reason, and not because of any error in the trial court's refusal to accept his tendered *Alford* plea.

¶ 14.   Williams's first claim of error relating to his trial is that the trial court improperly refused to adjourn so that he could obtain the presence of Michael Shea to testify on his behalf. Williams points out that the State had obtained adjournments of the trial on two prior occasions, implying that the trial court had shown favoritism by granting the State's requests and not his. We note, however, that each time the State sought to adjourn the scheduled trial, it was because a clearly material witness was unavailable. On the first occasion, Williams's wife, the alleged victim of the two misdemeanor charges, failed to respond to a subpoena; on the second, the police officer whom Williams alleg-edly battered had just given birth. On neither occasion did Williams object to the adjournment.[7]

---

[6] It is our impression that *Alford* pleas are infrequently tendered, and even more infrequently rejected. Thus, we con-clude that this court's workload is unlikely to be significantly affected by requiring defendants to seek interlocutory review of rejected *Alford* pleas. *Cf. State v. Webb*, 160 Wis. 2d 622, 632–33, 467 N.W.2d 108 (1991).

[7] With respect to his wife's absence, Williams objected to the court's suggestion that the trial might proceed by allowing the

¶ 15. In any event, the question before us is not whether the trial court wrongfully granted the State's adjournment requests, but whether the court erred in denying Williams's. Our review of the record leads us to conclude that the court did not erroneously exercise its discretion in denying Williams's request to adjourn the trial so that he could procure Michael Shea as a witness. *See Elam v. State*, 50 Wis. 2d 383, 389–90, 184 N.W.2d 176 (1971) (concluding that whether to grant a defendant's "motion for a continuance to obtain the attendance of witnesses is addressed to the discretion of the trial court"). Both parties cite *Elam* for the three questions a trial court should address in exercising its discretion. The court should consider "whether the testimony of the absent witness is material, whether the moving party has been guilty of any neglect in endeavoring to procure the attendance of the witness, and whether there is a reasonable expectation that the witness can be located." *Id*. at 390. A defendant's failure to make a satisfactory showing on one or more of the three considerations is grounds for denying his or her motion for a continuance. *See id*. at 390–92.

¶ 16. We conclude that the trial court did not err in determining that Shea's expected testimony was not material to the issues at trial, and thus, that no adjournment should be granted to procure his pres-

State to introduce Mrs. Williams's statements as those of an absent witness. Williams's concerns regarding his "right to confrontation" factored heavily in the court's decision to grant the State's requested continuance. On the second occasion, when the police victim was absent, Williams's counsel told the court that his client was "of course upset that the trial is not going this week," but acknowledged that he could not say that the court had "any alternative" but to again adjourn the trial.

ence. It is true that "[t]estimony which tends to prove that the accused was at another place at the time the crime was committed, and therefore could not have been involved, is clearly relevant and material. . . ." *Id.* at 390. Williams, however, stipulated at trial that Shea's testimony would only place Williams in a different apartment sometime on the afternoon of the offenses, and that Shea would be unable to be more specific with respect to the time of day. We agree with the trial court's conclusion that "there has been nothing in this record that this Mr. Shea could give any evidence that had any probative value," and we thus affirm the court's denial of a continuance.

¶ 17.  Williams also asks, alternatively, that we grant him a new trial under WIS. STAT. § 752.35 because Shea's absence prevented the real controversy from being fully tried. Section 752.35 allows us to reverse a trial court's judgment if we conclude either (1) the real controversy has not been fully tried, or (2) it is probable that justice has miscarried. *See* § 752.35. The former may occur when the jury is precluded from considering "important testimony that bore on an important issue" in the case. *See State v. Hicks*, 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996). Williams claims that the jury should have had the opportunity to hear Shea's testimony regarding Williams's presence in another apartment near the time of the offenses. Williams points to Shea's testimony at the postconviction hearing tending to establish that Williams was present in the other apartment about five minutes prior to Williams's contact with police outside the apartment complex.

¶ 18.  We have concluded that, based on the record before it at the time, the trial court did not

erroneously exercise its discretion in not adjourning the trial to allow Williams to attempt to locate Shea. We acknowledge that Shea's postconviction testimony is somewhat more specific regarding when the two had been together in the other apartment than was the statement he gave to Williams's investigator. Nonetheless, even as given at the postconviction hearing, Shea's testimony, if believed by the jury, establishes only that Williams stopped briefly at another apartment shortly before his arrest. Given the imprecise testimony in the record regarding the duration of Williams's contacts with both his wife and Shea, and regarding the timing of those contacts with respect to when he encountered the police officer outside the apartment complex, Shea's testimony falls far short of creating an alibi for Williams. We thus conclude that it is not "important" testimony, and we decline to order a new trial under WIS. STAT. § 752.35.

¶ 19. Finally, we address Williams's claims regarding the failure to remove for cause a juror who said that "it would be very difficult" for her to put aside a past experience of domestic violence and to "listen to the witnesses and judge them fairly," but that she "could try" to do so. Williams claims that the trial court erred by not *sua sponte* following up this response with further questions and/or removing the juror. He finds support for what he terms the trial judge's "affirmative duty to insure that all jurors impaneled to hear a case must be fair and impartial" in WIS. STAT. § 805.08(1), which provides that "[t]he court shall examine on oath each person who is called as a juror to discover whether the juror . . . is aware of any bias or prejudice in the case. If a juror is not indifferent in the case, the juror shall be excused." We agree that the trial court ultimately bears the responsibility for ensuring that a fair

and impartial jury is impaneled. We reject, however, the notion that a party who during voir dire neither requests further questioning nor objects to the seating of a juror may later allege error in the trial court's failure to act *sua sponte*.

¶ 20.   This court concluded in *State v. Brunette*, 220 Wis. 2d 431, 440–42, 583 N.W.2d 174 (Ct. App. 1998), that a claim of juror bias is waived if not timely presented in the trial court. We explained in *Brunette* that the requirement for a timely objection in order to preserve a claim avoids "unnecessary reversals" by allowing the trial court to correct errors, and that appellate review of a juror bias claim is severely hampered when we are deprived of "the contemporaneous impressions of the trial court and its reasoning" on a question of juror bias. *See id.* This latter point is significant in the present appeal, inasmuch as Williams claims that the juror exhibited "subjective bias." The resolution of a claim that a juror is subjectively biased turns in large measure on the "circuit court's assessment of the individual's honesty and credibility," and we review a trial court's factual finding regarding subjective juror bias under the "clearly erroneous" standard. *See State v. Faucher*, 227 Wis. 2d 700, 718, 596 N.W.2d 770 (1999).

¶ 21.   Thus, because Williams failed to raise any concerns regarding the juror in question during voir dire, we will not entertain his belated claim that the trial court should have taken further action after the juror responded that she "could try" to set aside her past experience. Williams may, however, raise his counsel's failure to object or further question the juror as a claim of ineffective assistance of counsel, and Williams does so. *See Brunette*, 220 Wis. 2d at 445.

¶ 22. To prevail on a claim of ineffective assistance of counsel, a defendant must establish both that his trial counsel's performance was deficient and that this performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). In analyzing an ineffective assistance claim, this court may choose to address either the "deficient performance" component or the "prejudice" component first. *See id.* at 697. If we determine that the defendant has made an inadequate showing on either component, we need not address the other. *See id.* We consider first whether Williams's counsel performed deficiently by not objecting to or further questioning the juror in question. As we have noted, counsel testified that he made a tactical decision to forego additional questioning of this juror, preferring to simply strike her peremptorily, thereby avoiding the risk of alienating other jurors or giving them the impression that he feared having persons on the jury who had experienced domestic violence.

¶ 23. Deficient performance requires a showing that defense counsel's representation fell below an objective standard of reasonableness. *See id.* at 688. A court must review an attorney's performance with great deference, and the defendant must overcome the strong presumption that counsel acted reasonably within professional norms. *See State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). Whether an attorney's actions constitute ineffective assistance of counsel is a question of mixed fact and law. *See id.* What the attorney did or did not do is a question of fact, and the trial court's determination on that matter will not be overturned unless clearly erroneous. *See id.* The ultimate question of whether that conduct constitutes

deficient representation is a question of law, however, which this court reviews de novo. *See id.* at 128.

¶ 24.  Williams argues that we must conclude his counsel's performance was deficient because we concluded in *State v. Traylor*, 170 Wis. 2d 393, 399–400, 489 N.W.2d 626 (Ct. App. 1992), that an attorney had performed deficiently when he failed to strike or further question five potentially biased jurors, and then used all of the defendant's peremptory strikes to remove four of them from the jury. We note that our opinion in *Traylor* contains no mention of what justification, if any, the defense attorney might have offered for his decisions during voir dire and jury selection. Here, we have a plausible account by counsel as to why he elected to forego a challenge for cause in favor of a peremptory strike. Our own review of the voir dire transcript does not suggest that counsel's tactical decision to so employ one of Williams's five peremptory strikes impeded counsel's ability to obtain a jury panel that was to his and his client's liking. That is, unlike in *Traylor*, where counsel expended the entire complement of peremptory strikes and was still left with one potentially biased juror, here, there were few other responses by jurors to any queries from the court or counsel, and the responses given, except for those of the juror in question, were not such as to suggest bias.

¶ 25.  We thus conclude that Williams has not established that his counsel's performance was deficient in regard to jury selection. The tactical decision to peremptorily strike the one juror whose responses suggested bias, instead of posing additional questions to the juror or moving to strike her for cause, all in order to avoid alienating other jurors or suggesting to them that the defendant felt he could not be judged fairly by

608

someone who had experienced domestic violence, was reasonable under the circumstances. Counsel's performance was well within the "wide range" of conduct that constitutes professionally competent assistance, especially when viewed from counsel's perspective at the time, rather than through the potentially distorting prism of hindsight. *See Strickland*, 466 U.S. at 689.

## CONCLUSION

¶ 26.    For the reasons discussed above, we affirm the judgment of conviction and the order denying postconviction relief.

*By the Court.*—Judgment and order affirmed.