# COURT OF APPEALS
# DECISION
# DATED AND FILED

## November 23, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2020AP1275-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CF2146

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

ANTWAN DEVONTA GREEN,

      DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JOSEPH R. WALL and GLENN H. YAMAHIRO, Judges. *Affirmed*.

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Antwan Devonta Green appeals a judgment of conviction entered following a jury trial for felon in possession of a firearm and carrying a concealed weapon, both as a party to a crime, and an order denying postconviction relief.[1] Green contends that one of the jurors who sat on the panel was subjectively biased and the trial court should have struck the juror *sua sponte*. Alternatively, Green argues that his trial counsel was ineffective for failing to move to strike the juror from the panel. We disagree and affirm.

## BACKGROUND

¶2 According to the criminal complaint, on May 12, 2016, police had contact with Green, who was the front passenger in a vehicle. A baggie of marijuana was discovered underneath Green's body and a handgun was found protruding out from the left side of the front passenger seat. Green was charged with possession of a firearm by a felon and carrying a concealed weapon, both as a party to a crime.

¶3 Green proceeded to trial. After the jury panel was sworn in, the trial court discussed the selection process and told the panel that they would be asked questions intended "to determine if there's any reason why you could not be a fair and impartial juror in this case." The trial court explained that the "ultimate purpose of jury selection [is] to select a fair, unbiased, impartial jury."

¶4 Relevant to this appeal, the trial court asked the panel whether they would "tend to give more weight and credibility to the testimony of a police

---

[1] The Honorable Joseph R. Wall presided over the jury trial. The Honorable Glenn H. Yamahiro issued the order denying the postconviction motion. We refer to Judge Wall as the trial court and Judge Yamahiro as the postconviction court.

officer simply because that person is a police officer?" Several of the panel members raised their hands, including Juror 17. When the court questioned Juror 17, the following exchange occurred:

> JUROR 17: I think it's along the same lines as the other people. Just, you know, I was raised to respect, you know, officers, and knowing they take an oath to protect and serve they are the, you know, good guys. Just being raised that way, you know, back of my mind always.
>
> THE COURT: So, you would tend to believe them over a regular citizen?
>
> JUROR 17: Correct.
>
> THE COURT: If it was one on one?
>
> JUROR 17: Yeah. I mean, like I said, you know, you're taught from a child to, you know, obey the police and your elders so –
>
> THE COURT: Okay.

¶5     Subsequently, the State addressed the credibility of police officers with the jury. The State explained that the judge would be giving instructions about weighing witness testimony, so "when you listen to witnesses testify you'll be told you're allowed to take into account their training, their experience, their motive for telling the truth or for lying." The State then inquired if there was anybody that believed officers could not make mistakes or would believe an officer no matter what:

> *Is anyone here that says because it's a police officer they couldn't lie? Everybody agree an officer could lie? An officer could make a mistake, think he sees something and ends up being wrong. Anybody think an officer can't make a mistake?*
>
> So if you heard an officer testify is anyone here no matter what the officer says I'm going to believe the officer, I don't care if somebody else says different, or will you weigh the officer's testimony with all the facts including the officer's experience, judge … what they're

saying—and you can take into account that it's their job, they might not have a personal iron in the fire, they might not be personally involved other than doing their job, but you still have to weigh their credibility, decide is he telling the truth with every witness including an officer, did they make a mistake, is their memory perfect, and we all agree nobody's memory is perfect, correct?

*Anybody here feel that no matter what the officer says I'm going with the officers, it doesn't matter? Anybody contradicts an officer I trust the officer. Does anybody have that opinion?*

So I'm getting at least an understanding here. If an officer says something you'll listen to it, you'll decide whether it makes sense, you'll listen to whether the officer was in a position to observe what he said he saw, decide how accurate his memory is, and you'll decide if you believe the officer or not, and *if it doesn't ring true you're willing to say well, that officer might be doing his job but I don't necessarily think he got it right, either he made a mistake or he's lying.*

*Anybody not willing to do that, consider the officer's testimony?*

(Emphasis added.) None of the jurors responded.

¶6      Toward the conclusion of its questioning, the State again followed up about whether there was anybody who could not set aside their strong feelings about police officers:

Anybody here feel they can't listen to the evidence and testimony and render a verdict based on that, not affected by strong feelings about guns, police officers or other things? Nothing wrong with respecting police officers but these individual officers you got to listen to their testimony and make a decision here.

Anyone think they cannot do that?

4

In response, two jurors raised their hands; however, Juror 17 did not.[2]

¶7    Trial counsel also addressed the credibility of police officers.  Trial counsel inquired:

> Does everyone agree that police sometimes make interactions with people in very brief period[s] of time, moments, seconds?  In those moments the police can be wrong?  Does everyone agree to that?
>
> Anyone feel that there would be—we've heard besides the people mentioned already they'd have difficulty with that issue?  Does anyone believe or have difficulty believing that police officers have lied on the stand?  Does everyone feel … that police officers have not lied on the stand?

¶8    Trial counsel did not move to strike Juror 17 for cause, nor did trial counsel exercise a preemptory strike to remove Juror 17.  Juror 17 was ultimately selected to sit on the panel.

¶9    The jury found Green guilty of both counts as charged.  Green received a global sentence of five years of initial confinement and five years of extended supervision.

¶10    Green filed a postconviction motion alleging that Juror 17 was subjectively biased and that the trial court erred by failing to strike him for cause. In the alternative, Green argued that trial counsel was ineffective for failing to move to strike Juror 17.

---

[2] Juror 17 also raised his hand in response to a different inquiry from the State regarding firearms, but after further questioning stated that he could be fair and follow the law.

¶11     After briefing, the postconviction court denied the motion without an evidentiary hearing.  The postconviction court concluded that the trial court did not err by failing to strike Juror 17 for cause and that trial counsel was not ineffective.  The postconviction court stated that Juror 17 "gave honest answers about his initial inclination to believe the word of police officers"; however, subsequently, the State "asked multiple ways whether any of the potential jurors would not be able to set aside the deference to police previously expressed, in order to fairly evaluate the evidence" and Juror 17 did not respond.  Thus, the State "ensured that none of the prospective jurors would elevate an officer's testimony no matter any contradictions."  This appeal follows.

## DISCUSSION

¶12     On appeal, Green renews his claim that Juror 17 was subjectively biased and the trial court erred by failing to strike Juror 17 for cause.[3]   In the alternative, Green contends that trial counsel was ineffective.  We disagree.

¶13     First, Green forfeited his challenge to the inclusion of Juror 17 on the panel.  A defendant forfeits an objection to a juror's bias if no motion is made to the trial court to remove the juror for cause.  *State v. Brunette*, 220 Wis. 2d 431, 445, 583 N.W.2d 174 (Ct. App. 1998); *see also* *State v. Williams*, 2000 WI App 123, ¶¶20-21, 237 Wis. 2d 591, 614 N.W.2d 11.  Here, Green did not move to

---

[3] Green also suggests that Juror 7 and Juror 15 should have been struck for cause.  However, Juror 7 and Juror 15 did not sit on the panel—the State used a preemptory strike on Juror 7 and Green used a preemptory strike on Juror 15.  Thus, as Green acknowledges, he cannot claim error.  "The substantial rights of a party are not affected or impaired when a defendant chooses to exercise a single peremptory strike to correct a circuit court error."  *State v. Lindell*, 2001 WI 108, ¶113, 245 Wis. 2d 689, 629 N.W.2d 223.

strike Juror 17 for bias in the trial court. Green raised this issue for the first time in his postconviction motion.

¶14 Second, even if Green's challenge is not forfeited, Green has failed to establish that Juror 17 was subjectively biased.[4] "The United States and Wisconsin Constitutions guarantee a criminal defendant the right to a trial by an impartial jury." *State v. Nielsen*, 2001 WI App 192, ¶24, 247 Wis. 2d 466, 634 N.W.2d 325; *see also* WIS. STAT. § 805.08(1) (2019-20).[5] "Prospective jurors are presumed impartial," and it is the defendant's burden to rebut this presumption. *State v. Gutierrez*, 2020 WI 52, ¶39, 391 Wis. 2d 799, 943 N.W.2d 870 (citation omitted).

¶15 The Wisconsin Supreme Court has recognized three types of bias: (1) statutory bias; (2) subjective bias; and (3) objective bias. *State v. Lepsch*, 2017 WI 27, ¶22, 374 Wis. 2d 98, 892 N.W.2d 682. Subjective bias, which is at issue in this case, turns on "the words and the demeanor of the prospective juror." *State v. Faucher*, 227 Wis. 2d 700, 717, 596 N.W.2d 770 (1999).

¶16 "The [trial] court sits in a superior position to assess the demeanor and disposition of prospective jurors, and thus, whether they are subjectively biased." *Lepsch*, 374 Wis. 2d 98, ¶23 (citing *Faucher*, 227 Wis. 2d at 718). Thus, "we will uphold the [trial] court's factual finding that a prospective juror is

---

[4] Green argues that the State forfeited any argument that Juror 17 was not subjectively biased by failing to include it in their postconviction response. However, this court can consider new arguments raised by respondents who seek to uphold the result reached below. *See Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶27 n.4, 326 Wis. 2d 729, 786 N.W.2d 78.

[5] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

or is not subjectively biased unless it is clearly erroneous." *Lepsch*, 374 Wis. 2d 98, ¶23 (citation omitted).[6]

¶17     Green suggests that impartiality must be established through individual questioning. We disagree. Contrary to Green's suggestion, a jury's impartiality can be established through other aspects of the jury selection process. *See id.*, ¶¶28-30.

¶18     In this case, Juror 17 initially indicated that he would tend to give more credibility and weight to the testimony of a police officer. However, subsequently, as the postconviction court observed, the State "asked multiple ways whether any of the potential jurors would not be able to set aside the deference to police previously expressed, in order to fairly evaluate the evidence" and Juror 17 did not respond.

¶19     Likewise, trial counsel also inquired if anyone would "have difficulty believing that police officers have lied on the stand." Once again, Juror 17 did not raise his hand. Thus, by the nature of his silence, Juror 17 expressed his agreement that he was willing to decide if an officer was credible, willing to say that an officer might have "made a mistake or he's lying," and could render a verdict based on the evidence "not affected by strong feelings about guns, police officers or other things."

---

[6] Green suggests that *State v. Lepsch*, 2017 WI 27, 374 Wis. 2d 98, 892 N.W.2d 682, and *State v. Faucher*, 227 Wis. 2d 700, 596 N.W.2d 770 (1999), provide inconsistent standards of review. We disagree. Both cases state that a trial court's factual finding that a prospective juror is or is not subjectively biased will be upheld unless it is clearly erroneous. *Lepsch*, 374 Wis. 2d 98, ¶23; *Faucher*, 227 Wis. 2d at 730.

¶20     To support his argument, Green points to *State v. Carter*, 2002 WI App 55, 250 Wis. 2d 851, 641 N.W.2d 517.  *Carter*, however, is distinguishable.  In *Carter*, during *voir dire*, a prospective juror told the court that his brother-in-law had been sexually assaulted.  *Id.*, ¶3.  The State asked the juror whether this would influence or affect his ability to be fair or impartial and the juror responded "Yes."  *Id.*  The juror was not asked any follow-up questions about his admitted bias.  *See id.*, ¶12.  Ultimately, the juror served on the panel and the defendant was convicted.  *Id.*, ¶4.

¶21     We concluded in *Carter* that the defendant was entitled to a new trial because the juror was subjectively biased and trial counsel was ineffective.  *Id.*, ¶2.  In doing so, we found that the clearly erroneous standard of review was inappropriate because the juror "openly admitted his bias and his partiality was never questioned," thus, the juror was "subjectively biased as a matter of law." *Id.*, ¶12.  We also noted that even though the juror had given "general assurances that he could be fair and impartial," those assurances "occurred *before* the questioning about his experience with sexual assault victims."  *Id.*, ¶5 (emphasis added).

¶22     Here, Juror 17 initially indicated that he would give more weight and credibility to a police officer's testimony.  However, unlike in *Carter*, subsequently, the panel was asked additional follow-up questions.  Juror 17's lack of response to these subsequent questions indicated that he was willing to properly assess a police officer's credibility and render a verdict based on the evidence. Therefore, Green has failed to meet his burden to establish that Juror 17 was subjectively biased.

¶23 Finally, we reject Green's argument that trial counsel was ineffective. To establish ineffective assistance of counsel, a defendant must demonstrate that his lawyer performed deficiently and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As discussed above, Green has failed to establish that Juror 17 was subjectively biased. Thus, trial counsel cannot be ineffective for failing to remove Juror 17 from the panel. *See Lepsch*, 374 Wis. 2d 98, ¶27 (finding that the defendant could not establish ineffective assistance because he could not prove subjective or objective bias); *State v. Wheat*, 2002 WI App 153, ¶30, 256 Wis. 2d 270, 647 N.W.2d 441 (holding that trial counsel was not ineffective for failing to bring a meritless motion).

¶24 In sum, we conclude that Green forfeited his challenge to Juror 17's inclusion on the panel. Even if Green's challenge is not forfeited, Green has failed to establish that Juror 17 was subjectively biased and, thus, that trial counsel was ineffective. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.