# COURT OF APPEALS
# DECISION
# DATED AND FILED

## February 8, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP318-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF144

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

WILLIAM A. CARSTENS,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Shawano County: JAMES R. HABECK and KATHERINE SLOMA, Judges. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. William Carstens appeals a judgment, entered following a jury trial, convicting him of one count of child enticement. Carstens also appeals an order denying his motion for postconviction relief.[1] Carstens argues that the circuit court erroneously exercised its discretion by admitting other-acts evidence at his trial. He also argues that the court erred by denying his request to adjourn the trial based on a missing defense witness. We reject these arguments and affirm.

## BACKGROUND

¶2    Carstens was charged with one count of first-degree sexual assault of a child (sexual contact with a child under age thirteen) and one count of child enticement, based on allegations that he had sexually assaulted Audrey,[2] an eleven-year-old girl who lived next door to him.[3] According to the criminal complaint, while Audrey was visiting Carstens' residence on the evening of April 18, 2018, Carstens asked if she wanted to give him a backrub, and she agreed to do so. Carstens then told Audrey to go with him upstairs to his bedroom, where he took his shirt off and lay down on his stomach.

¶3    Carstens began making sexually suggestive comments to Audrey, and while Audrey was rubbing Carstens' back, he started "touching [her] butt"

---

[1] The Honorable James R. Habeck presided over Carstens' trial and sentencing. The Honorable Katherine Sloma denied Carstens' postconviction motion.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2019-20), we refer to the victim using a pseudonym. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[3] Carstens was also charged with possession with intent to deliver THC. However, that charge was later severed from the charges related to Carstens' conduct with Audrey, and it is not at issue in this appeal.

over her clothing. Carstens' wife then came into the room and separated Audrey and Carstens. Carstens' wife told Audrey that it was not right for her to rub Carstens' back. Audrey reported the sexual assault to Carstens' wife. Audrey then went home and reported the assault to her mother.

¶4 Three days later, police executed a search warrant at Carstens' residence. During the search, officers located "a pair of lime green little girl underwear which appeared to be worn" inside Carstens' nightstand. In the same drawer of Carstens' nightstand, the officers also found "numerous sex toys" and "lubricants." The officers also located a personal computer belonging to Carstens, on which they found "approximately 15-20 images depicting young pubescent female children between the approximate ages of 12-17 who are either fully or partially nude."

¶5 Prior to trial, Carstens filed a motion in limine seeking generally to prevent the State from introducing other-acts evidence. The State then filed a motion to introduce as other-acts evidence both the underwear found in Carstens' nightstand and the photographs found on his computer. The State argued this evidence was being offered for multiple permissible purposes—specifically, to show Carstens' motive and intent, and to demonstrate the absence of mistake or accident. The State further argued the evidence was relevant to show that Carstens had acted with the intent to receive sexual gratification from touching Audrey's buttocks. The State also asserted that the other-acts evidence would not be unfairly prejudicial, and that any prejudice could be limited by an appropriate cautionary instruction. In addition, the State emphasized that the greater latitude rule set forth in WIS. STAT. § 904.04(2)(b) applied because the case involved the sexual assault of a child.

3

¶6 The circuit court granted the State's motion to admit the photographs and underwear as other-acts evidence, stating it had "no disagreement with the rationale of the State's brief." More specifically, the court concluded that the evidence was "relevant" and was "not unduly prejudicial to the defense." The court also stated that a "key factor" in its decision was "the relationship between an area of sexual interest being necessary to prove [that] the purpose of certain activities would be intentional and related to sexual arousal or gratification."

¶7 Carstens' trial was scheduled to take place in November 2019. On the day before trial, however, the circuit court granted the defense's request for an adjournment based on medical issues that Carstens was experiencing. The trial was rescheduled for February 2020, but on the morning of the first day of the rescheduled trial, the defense again requested an adjournment. Carstens' attorney informed the court that a defense witness, John Kellogg, had been evading attempts to serve him with a subpoena to appear at trial, even though he had been successfully subpoenaed for the first scheduled trial. Counsel explained that Kellogg had previously been in a relationship with Audrey's mother, and that the defense planned to call him to testify as to Audrey's reputation for being untruthful.

¶8 The State opposed Carstens' request for an adjournment. It noted that Kellogg would not be permitted to testify as to any specific instances of Audrey being untruthful, and that the defense had multiple other witnesses who would testify generally about Audrey's reputation for untruthfulness. The State therefore asserted that Kellogg's testimony would be unnecessary and repetitive. The State further noted that the trial had already been postponed once, and that Audrey "really wants this trial to be over with."

¶9 The circuit court denied Carstens' request for an adjournment. The court reasoned that the trial had already been postponed, and that Audrey was anxious to have the matter concluded. The court also agreed with the State that Kellogg's proposed testimony would be repetitive. The court further reasoned, "I don't know that postponing [the trial] is going to change whether you're able to successfully [subpoena Kellogg] or not."

¶10 Following a two-day trial, the jury found Carstens guilty of the child enticement charge, but not guilty of the sexual assault charge. Carstens moved for postconviction relief, arguing that the circuit court had erred by admitting the State's other-acts evidence and by denying his request for an adjournment. The court denied Carstens' motion, and this appeal follows.

## DISCUSSION

### I. Other-acts evidence

¶11 We review a circuit court's decision to admit other-acts evidence for an erroneous exercise of discretion. *State v. Hurley*, 2015 WI 35, ¶28, 361 Wis. 2d 529, 861 N.W.2d 174. We will therefore uphold the court's decision as long as it examined the relevant facts, applied a proper legal standard, and used a rational process to reach a reasonable conclusion. *Id.* Even if the court failed to adequately explain its reasoning, we will independently review the record to determine whether it provides a basis for the court's exercise of discretion. *State v. Sullivan*, 216 Wis. 2d 768, 781, 576 N.W.2d 30 (1998).

¶12 As a general matter, evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." WIS. STAT. § 904.04(2)(a). Such evidence may be

admissible, however, when offered for another purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

¶13    In *Sullivan*, our supreme court set forth a three-part test for determining whether other-acts evidence is admissible. *Sullivan*, 216 Wis. 2d at 772-73.    Under that test, a court must consider whether: (1) the other-acts evidence is offered for a permissible purpose under WIS. STAT. § 904.04(2); (2) the evidence is relevant under WIS. STAT. § 904.01; and (3) the evidence's probative value is substantially outweighed by the danger of unfair prejudice under WIS. STAT. § 904.03. *Sullivan*, 216 Wis. 2d at 772-73. The proponent of the evidence bears the burden on the permissible purpose and relevance prongs of the *Sullivan* test, while the opponent bears the burden to establish unfair prejudice. *State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399.

¶14    Other-acts evidence "is particularly relevant in child sexual assault cases because an average juror likely presumes that a defendant is incapable of such an act." *Hurley*, 361 Wis. 2d 529, ¶59.  As such, Wisconsin courts permit a "greater latitude of proof as to other like occurrences" in cases involving child sexual assault. *State v. Davidson*, 2000 WI 91, ¶36, 236 Wis. 2d 537, 613 N.W.2d 606 (citation omitted).  The greater latitude rule has been codified in WIS. STAT. § 904.04(2)(b)1., which states that when a defendant is charged with sexually assaulting a child, "evidence of any similar acts by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act." The greater latitude rule applies to each step of the *Sullivan* analysis. *Hurley*, 361 Wis. 2d 529, ¶59.

¶15 Applying the legal principles set forth above to the instant case, we conclude the circuit court did not erroneously exercise its discretion by admitting the State's proffered other-acts evidence. The first step of the *Sullivan* analysis is "not demanding" and is "largely meant to develop the framework for the relevancy determination" performed in the second step. *Marinez*, 331 Wis. 2d 568, ¶25. "As long as the State and circuit court have articulated at least *one* permissible purpose for which the other-acts evidence was offered and accepted, the first prong of the *Sullivan* analysis is met." *Marinez*, 331 Wis. 2d 568, ¶25.

¶16 In this case, to obtain a conviction on the sexual assault charge, the State needed to prove that Carstens had sexual contact with Audrey. *See* WIS. STAT. § 948.02(1)(e). To obtain a conviction on the child enticement charge, the State needed to prove that Carstens caused Audrey to go into a secluded place with the intent to have sexual contact with her. *See* WIS. STAT. § 948.07(1). Thus, for both charges, the State needed to prove that Carstens had, or intended to have, sexual contact with Audrey. To prove sexual contact, the State needed to show both that Carstens intentionally touched Audrey's buttocks and that the intentional touching was "for the purpose of sexually degrading or sexually humiliating [Audrey] or sexually arousing or gratifying [Carstens]." *See* WIS. STAT. § 948.01(5)(a)1. Accordingly, the State offered the photographs and underwear to show Carstens' motive and intent in touching Audrey's buttocks—i.e., to become sexually aroused or gratified—and his motive and intent in taking Audrey into the bedroom—i.e., to have sexual contact with her. The State also offered the evidence to rebut any claim that Carstens' touching of Audrey's buttocks was an accident or a mistake. These purposes for offering the other-acts evidence were permissible under WIS. STAT. § 904.04(2)(a).

¶17 Turning to the second step of the *Sullivan* analysis, the circuit court reasonably concluded that the other-acts evidence was relevant. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01.

¶18 Carstens' possession of photographs of nude or partially nude female children, and his keeping a pair of children's underwear in the same nightstand drawer where he kept various sex toys and lubricants, strongly suggests that he is sexually attracted to children, and specifically female children. The other-acts evidence therefore related to, and made more probable, two propositions that were of consequence to the determination of this action—i.e., that Carstens touched Audrey's buttocks with the intent to become sexually aroused or gratified, and that Carstens caused Audrey to go into the bedroom with the intent to have sexual contact with her. By suggesting that Carstens is sexually attracted to female children, the other-acts evidence also tended to rebut any inference that Carstens accidentally or mistakenly touched Audrey's buttocks. The other-acts evidence was therefore relevant under WIS. STAT. § 904.01.

¶19 Carstens argues the photographs were not relevant because the State failed to prove that the individuals depicted in the images were children. He asserts that the photographs were sent to the National Center for Missing and Exploited Children, which responded that the photographs were not known images of child pornography. Carstens further notes that the State's witness, Detective Gordon Kowaleski, testified that he reviewed the contents of Carstens' computer and flagged twenty pornographic images because he "thought they looked like younger women." Kowaleski conceded, however, that deciding which images to flag was a "subjective process." Kowaleski further conceded that he did

not know "for sure" that the individuals depicted in the photographs were under eighteen.

¶20    We reject Carstens' argument that the photographs were not relevant to show that he is sexually attracted to female children.  The fact that the State failed to establish the actual ages of the individuals depicted in the photographs is not dispositive.  Instead, what matters is that the individuals in the photographs *appear to be* underage.  Because the individuals look like they are underage, the images support the proposition that Carstens is attracted to underage girls.  That proposition, in turn, supports the reasonable inferences that Carstens brought Audrey into his bedroom with the intent to have sexual contact with her, and that he touched Audrey's buttocks with the intent to become sexually aroused or gratified.

¶21    Carstens also claims that the images are not "similar" to his alleged conduct with Audrey, and that the underwear had "nothing to do with the conduct that was alleged."  We disagree.  Carstens was accused of having sexual contact with Audrey—that is, intentionally touching her buttocks for the purpose of sexually arousing or gratifying himself.  He was also accused of taking Audrey into a secluded place with the intent to have sexual contact with her.  The photographs and underwear are similar to this alleged conduct because they tend to show that Carstens is sexually attracted to underage girls like Audrey.  Particularly given the application of the greater latitude rule, the circuit court could reasonably conclude that the photographs and underwear were similar enough to the charged conduct to be relevant.

¶22    Carstens further argues that the photographs and underwear were not relevant to rebut a claim of mistake or accident because he never asserted at trial

9

that he accidentally or mistakenly touched Audrey. Although Carstens may not have expressly made that claim at trial, the jury could have believed Audrey's testimony that Carstens touched her buttocks, but nevertheless reasonably inferred that the touching was mistaken or accidental. The photographs and underwear were relevant to rebut that inference, regardless of whether Carstens expressly argued at trial that the touching was a mistake or accident.[4]

¶23     The third prong of the *Sullivan* test required Carstens to show that the probative value of the other-acts evidence was substantially outweighed by the danger of unfair prejudice. *See Marinez*, 331 Wis. 2d 568, ¶19. The circuit court did not erroneously exercise its discretion by determining that Carstens failed to meet this burden.

¶24     The probative value of evidence is a function of its relevance. *Hurley*, 361 Wis. 2d 529, ¶87. "Evidence that is highly relevant has great probative value, whereas evidence that is only slightly relevant has low probative value." *Id.*

¶25     Unfair prejudice, in turn, does not arise simply because other-acts evidence harms the opposing party's case. *Id.* Instead, unfair prejudice exists when the evidence in question tends to influence the outcome of the case by improper means—for instance, by appealing to the jury's sympathies, arousing its sense of horror, provoking its instinct to punish, or otherwise causing the jury to

---

[4] Carstens also argues that the other-acts evidence was not relevant to show identity or knowledge, or to provide context for Audrey's allegations. The State has never argued, however, that the evidence was relevant for any of those purposes. As noted above, the State need only articulate one permissible purpose to support the admission of other-acts evidence. *State v. Marinez*, 2011 WI 12, ¶25, 331 Wis. 2d 568, 797 N.W.2d 399.

base its decision on something other than the established propositions in the case. *Id.*, ¶¶87-88. Moreover, to satisfy his or her burden under the third step of the *Sullivan* analysis, a defendant must show not only that there was a risk of unfair prejudice, but that the risk *substantially outweighed* the other-acts evidence's probative value. *See Hurley*, 361 Wis. 2d 529, ¶90. "If the probative value [of the evidence] is close to or equal to its unfair prejudicial effect, the evidence must be admitted." *Id.*, ¶87.

¶26    In this case, the probative value of the other-acts evidence was high. As the State aptly notes, there are "few to no innocuous reasons" for a person with no small children to have a pair of children's underwear in the same nightstand drawer where that person keeps sex toys and lubricants, or to have pictures on his or her computer of girls who appear to be underage displaying their breasts and genitals. Like the State, we conclude the "most rational inference from a person's possessing these things is that the person is sexually aroused by them." The other-acts evidence was therefore highly relevant to show that Carstens was sexually attracted to underage girls. Moreover, the evidence was highly important to the State's case, given: Audrey's testimony that Carstens had never made any sexual advances toward her before this incident; Audrey's and her mother's testimony that they trusted Carstens prior to the assault; and Carstens' wife's testimony that Carstens had never expressed any sexual interest in children, and that she had never seen him touch a child in a sexual manner.

¶27    Conversely, the risk of unfair prejudice resulting from the other-acts evidence was relatively low. The underwear was merely a pair of children's underwear. The State did not make any salacious allegations about where Carstens had obtained the underwear or suggest the underwear showed that he had sexually assaulted another child. As for the photographs, while the jury likely

found them distasteful, none of the images were of very young children, as the individuals depicted appeared to be between twelve and seventeen years old. Furthermore, none of the individuals in the photographs were actively engaged in any sexual acts; they were simply exposing their vaginal areas or breasts. In addition, the jury was shown full-size images of only two of the photographs.

¶28 Moreover, any danger of unfair prejudice was mitigated by the circuit court's cautionary instruction, which informed the jury that it could consider the other-acts evidence only as it related to Carstens' intent to commit the crimes charged, and it could not consider the evidence "to conclude that the defendant has a certain character or a certain character trait, and that the defendant acted in conformity with that trait or character with regard to the offense charged in the case." Such cautionary instructions "substantially mitigate any unfair prejudicial effect" caused by other-acts evidence, *id.*, ¶89, and we presume that juries follow "properly given limiting and cautionary instructions," *id.*, ¶90 (citation omitted).

¶29 Thus, the other-acts evidence was highly probative of Carstens' intent, the evidence was not particularly inflammatory, and the circuit court mitigated any unfair prejudice by providing the jury with an appropriate cautionary instruction. Under these circumstances—and particularly given the application of the greater latitude rule—the court could reasonably conclude that the evidence's probative value was not substantially outweighed by the danger of unfair prejudice.

¶30 In summary, the circuit court properly exercised its discretion by determining that the other-acts evidence satisfied each of the three steps of the

*Sullivan* analysis. As such, the court did not err by granting the State's motion to admit the other-acts evidence.

## II. Request for an adjournment

¶31 Carstens also argues that the circuit court erred by denying his request for an adjournment of his trial after the defense was unable to subpoena Kellogg. We review the court's decision to deny Carstens' request for an adjournment for an erroneous exercise of discretion. *See **State v. Williams***, 2000 WI App 123, ¶15, 237 Wis. 2d 591, 614 N.W.2d 11.

¶32 A circuit court should consider three factors when deciding whether to grant an adjournment to secure the attendance of a witness: (1) whether the witness's testimony is material; (2) whether the moving party has been guilty of any neglect in endeavoring to procure the witness's attendance; and (3) whether there is a reasonable expectation that the witness can be located. *Id.* (citing ***Elam v. State***, 50 Wis. 2d 383, 390, 184 N.W.2d 176 (1971)). A defendant's failure to make a satisfactory showing on any one of these three factors is grounds for denying his or her request for an adjournment. *Id.*

¶33 The State argues the circuit court properly exercised its discretion by denying Carstens' request for an adjournment because Carstens did not show that Kellogg's testimony was material, or that there was a reasonable expectation that Kellogg could be located and served with a subpoena. We agree with the State's analysis.

¶34 In support of its request for an adjournment, the defense told the circuit court that it planned to call Kellogg to testify regarding Audrey's reputation for untruthfulness. In response, however, the State emphasized that the defense

had multiple other witnesses who would testify that Audrey had a reputation for being untruthful. The State therefore asserted that Kellogg's testimony would be repetitive and unnecessary. The circuit court agreed that Kellogg's testimony would be repetitive. Stated differently, the court determined that Kellogg's testimony would be cumulative and was therefore not material under the first prong of the *Elam* analysis. *Cf. Elam*, 50 Wis. 2d at 390 (concluding testimony was material "where the absent witnesses [were] the only ones who [could] give such evidence and their testimony would not be merely cumulative"); *see also Allen v. Allen*, 78 Wis. 2d 263, 275, 254 N.W.2d 244 (1977) (concluding the circuit court did not err by refusing to grant a continuance to secure a witness's attendance where the witness's testimony would have been cumulative), *superseded on other grounds by statute, as stated in Hollister v. Hollister*, 173 Wis. 2d 413, 496 N.W.2d 642 (Ct. App. 1992).

¶35     The circuit court also reasonably concluded, under the third prong of the *Elam* analysis, that Carstens had failed to show a reasonable expectation that Kellogg could be located and served with a subpoena. The defense told the court that although Kellogg had been successfully subpoenaed for the first scheduled trial, "[h]e has not been able to be subpoenaed, despite numerous attempts, for this trial." The defense explained that its process server had been in telephone contact with Kellogg, but Kellogg had not cooperated with the process server's attempts to serve him. The process server had been to Kellogg's home when Kellogg's car was present and the garage door was open, but Kellogg would not come to the door. Carstens' attorney stated the defense had been trying unsuccessfully to subpoena Kellogg "for the last week," and counsel characterized Kellogg as "purposely trying to evade service of process." Given these representations by the defense, it was reasonable for the court to conclude that granting Carstens' request

for an adjournment was not reasonably likely to result in the defense successfully locating Kellogg and serving him with a subpoena.

¶36 As the above summary shows, when denying Carstens' request for an adjournment, the circuit court examined the relevant facts, applied a proper standard of law, and used a rational process to reach a reasonable conclusion. *See Hurley*, 361 Wis. 2d 529, ¶28. Consequently, the court properly exercised its discretion by denying Carstens' request for an adjournment.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.